```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOHN CORTESE, Individually    :      CIVIL ACTION
    and on Behalf of all      :
    Others Similarly          :
    Situated,                 :
                              :
         v.                   :
                              :
RADIAN GROUP INC., S.A.       :      NO. 07-3375
    IBRAHIM, and C. ROBERT    :
    QUINT                     :
```

MEMORANDUM & ORDER

McLaughlin, J.                                    January 30th, 2008


      Two actions have been filed against defendants Radian Group, Inc. ("Radian"), Stanford A. Ibrahim, and C. Robert Quint. The plaintiffs are John Cortese, individually and on behalf of all others similarly situated, in the case numbered 07-3773, and William Maslar, individually and on behalf of all others similarly situated, in the case numbered 07-3375.

      The plaintiffs seek damages for violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Securities and Exchange Commission ("SEC") Rule 10b-5 (17 C.F.R. § 240.10b-5). The cases are brought on behalf of purchasers of Radian securities between January 23, 2007, and July 31, 2007. Radian provides credit protection products and financial services to financial institutions, including mortgage lenders. One of Radian's principal affiliates, Credit-Based Asset Servicing and Securitization ("C-BASS") invests in the

credit risk of subprime residential mortgages.  The plaintiffs allege that the defendants made false and misleading statements about C-BASS's investments, artificially inflating Radian's stock price.  Maslar Compl. at 2-3.

The Court must now decide two competing motions for appointment as lead plaintiffs pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Movants Iron Workers Local No. 25 Pension Fund ("Iron Workers") and City of Ann Arbor Employees' Retirement System ("Ann Arbor") have filed a motion to consolidate the Cortese and Maslar actions, for appointment as lead plaintiffs, and for approval of their selection of the law firm of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as lead counsel and the Law Offices Bernard M. Gross, P.C. ("Bernard Gross"), as liaison counsel.  Movant Tulare County Employees' Retirement Association ("Tulare") has filed a motion to consolidate the two actions, for appointment as lead plaintiff, and for approval of its selection of the law firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C., as lead counsel.

The Court will grant the motion by Iron Workers and Ann Arbor for appointment as lead plaintiffs and will approve Iron Workers and Ann Arbor's selection of lead counsel and liaison counsel.  The Court will also consolidate the Cortese and Maslar actions.  Both movants have moved to consolidate and the defendants have not opposed the motions.

2

Under the PSLRA, the Court shall appoint as lead plaintiff(s) the member or members of the class that the Court determines to be most capable of adequately representing the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides that:

> The court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that --
>   (**aa**) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>   (**bb**) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>   (**cc**) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Id. § 78u-4(a)(3)(b)(iii)(I). Once the presumptively most adequate plaintiff is established, a member of the purported plaintiff class may rebut the presumption only upon proof that such plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. Id. § 78u-4(a)(3)(B)(iii)(II).

Both Iron Workers and Ann Arbor and Tulare filed timely motions as required by subparagraph (aa). The Cortese plaintiffs filed the first notice on August 15, 2007 and the initial motions were filed on October 15, 2007. Tulare Mot. Landau Decl.; Iron Workers/Ann Arbor Mot. Gross Decl.; 15 U.S.C. § 78u-4(a)(3)(B).

The Court finds, and movant Tulare does not dispute, that Iron Workers and Ann Arbor collectively have the largest

3

financial interest in the relief sough by the putative class within the meaning of subparagraph (bb).  Iron Workers and Ann Arbor claim a loss of $664,747.57 on their transactions in Radian shares (Iron Workers claims $544,753.15 and Ann Arbor claims $119,994.42).  Tulare claims a loss of $252,507.95.  Tulare contests Ann Arbor's method of calculating its losses because Ann Arbor sold most of its shares before the end of the Class Period.  Whether or not Tulare is correct that Ann Arbor cannot recover for some of its losses, Ann Arbor's claimed losses are smaller than Tulare's, and Iron Workers are significantly greater than Tulare's.  Taken together, Iron Workers and Ann Arbor have the largest financial interest.  Iron Workers/Ann Arbor Mot. Ex. B; Tulare Mot. Ex. B.; Tulare Opp. at 7.

   The PSLRA requires that a proposed lead plaintiff demonstrate that he or she satisfies the typicality and adequacy requirements of Rule 23, referred to in subparagraph (cc).  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

   The typicality requirement of Rule 23 is satisfied where the representative's claims arise from the same event, practice, or course of conduct that gives rise to the claims of the class members, and when the claims are based on the same legal theory.  <u>Hoxworth v. Blinder, Robinson & Co., Inc.</u>, 980 F.2d 912, 923 (3d Cir. 1992); <u>Krangel v. Golden Rule Resources, Ltd.</u>, 194 F.R.D. 501, 505 (E.D. Pa. 2000).  Significant factual differences do not preclude a typicality finding where there is a

strong similarity of legal theories.  In re Cigna Corp. Sec. Litig., No 02-8088, 2006 U.S. Dist. LEXIS 58560, at *9 (E.D. Pa. Aug. 18, 2006).  Iron Workers and Ann Arbor satisfy the typicality requirement, because, like the other class members, they:  1) purchased Radian securities during the Class Period; 2) at prices that were allegedly artificially inflated by the defendants' materially false and misleading statements; and 3) suffered damages as a result.

       The adequacy requirement of Rule 23 turns on two factors:  "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."  Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir.).  The counsel chosen by Iron Workers and Ann Arbor, Coughlin Stoia, appears to be qualified, experienced, and competent to pursue the class's claims.  The interests of Iron Workers and Ann Arbor appear well aligned with the interests of the putative class.  Tulare contests the adequacy of Iron Workers and Ann Arbor as lead plaintiff, which will be discussed below.

       Iron Workers and Ann Arbor together have the largest financial interest in the relief sought by the putative class and otherwise satisfy Rule 23.  They are therefore the presumptive lead plaintiffs.  The only way the Court can not appoint Iron Workers and Ann Arbor as lead plaintiffs is if Tulare rebuts the

presumption with proof that Iron Workers and Ann Arbor will not fairly and adequately protect the interests of the class or are subject to unique defenses that render them incapable of adequately representing the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Tulare argues that Iron Workers and Ann Arbor are inadequate for three reasons:  Iron Workers is pursuing too many other lead plaintiff positions and does not have the size, personnel, or resources to handle them; Iron Workers is severely underfunded and does not have the resources to monitor the litigation and supervise counsel; and Ann Arbor claims losses that it cannot recover.  The Court will address each of these arguments in turn.

Iron Workers is currently the lead plaintiff in two securities class actions and seeks to be appointed lead plaintiff in two others, including the case at bar.[1]  Tulare argues that Iron Workers cannot protect the best interests of the class while pursuing so many other cases.  The PSLRA has a "professional plaintiffs" restriction:  "a person may be a lead plaintiff . . . in no more than 5 securities class actions . . . during any 3-year period."  15 U.S.C. § 78u-4(a)(3)(B)(vi).  Even at the

---

[1] At the time of the initial motions, Iron Workers was seeking appointment as lead plaintiffs in three actions, including this one.  Iron Worker's lead plaintiff motion in A1 Credit Co. v. RAIT Fin. Trust, 07-CV-3148 (E.D. Pa.) was denied on October 25, 2007, because Iron Workers did not have the largest financial interest in that case.

time that the motions were filed, Iron Workers was not a "professional plaintiff" barred from further appointment as lead plaintiff under the PSLRA, because it had two lead plaintiff positions and three pending motions.  Success on all of those motions would have placed Iron Workers at the statutory maximum, but not above it.  If Iron Workers is successful in all of its current motions, it will be the lead plaintiff in four securities class actions, under the statutory maximum.  Absent other concerns about a presumptive lead plaintiff's resources, the mere fact that a movant is pursuing other lead plaintiff positions does not mean that it cannot be an effective lead plaintiff in this case.  Tulare Opp. at 3.

Tulare voices these additional concerns, arguing that Iron Workers is severely underfunded and will be too distracted by its "critical status" under the Pension Protection Act of 2006 and its accompanying obligations to vigorously represent the interests of the class.  In Tulare's opposition to Iron Worker's motion for lead plaintiff, Tulare says that Iron Workers had only 56% of the assets necessary to pay future benefits to plan participants.  Under the Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780, plans whose funded percentage is less than 65% are said to be in "critical status" and are required to develop comprehensive rehabilitation plans.  Tulare argues that the Iron Workers staff will be preoccupied with a time-consuming effort to rescue the pension plan and so will not focus their

resources on the Radian litigation. At oral argument Tulare raised an additional concern: that Iron Worker's tenuous financial situation might affect its ability to fairly consider litigation decisions, including settlement. Tulare pointed out that if Iron Workers is in financial trouble, it may be more likely to accept a smaller quick settlement rather than holding out for a higher number or taking the case to trial. Tulare Opp. at 5-6; Oral Arg. Tr. at 11, Dec. 5, 2007.

Iron Workers contests Tulare's facts and its argument. At oral argument, Iron Workers claimed to be 70% funded, not 56% funded, as Tulare had argued. At the Court's request, Iron Workers submitted supplemental information on its funding level and financial position. A declaration from Iron Workers fund administrator Dennis Kramer stated that Iron Workers has a staff of ten, a board of six trustees, and that as of May 1, 2007, the market value of Iron Worker's total assets was in excess of $651 million and that it was more than 70% funded. Tulare contested the adequacy of the declaration, saying that it lacked sufficient detail. Iron Workers responded in a letter to the Court that detailed the basis for its funding calculations and confirmed its plans to resolve the funding shortage. Based on the documents submitted with the motions, the parties' presentations at oral argument, Mr. Kramer's declaration, and the correspondence from the parties, the Court is satisfied that as of May 1, 2007, Iron Workers was funded at 70%, not 56%. Oral Arg. Tr. at 35-36; Iron

Workers/Ann Arbor Supp. Ex. A (Kramer Decl., Dec. 12, 2007); Tulare Resp. at 3.

Tulare argues that even if Iron Workers is funded at 70%, it will still be too distracted by its endangered status under the Pension Protection Act to effectively pursue the litigation. At oral argument, Iron Workers acknowledged that, as a theoretical matter, an entity in dire financial straits might not be a good class representative because of a willingness to take a quick settlement. Iron Workers denied that it was in such a financial position, and said that it is committed to representing the interests of the entire class and will commit the necessary resources to maximize recovery. It points out that having lost more than $500,000, it is particularly motivated to recover those funds. Oral Arg. Tr. at 21, 23-24; Iron Workers/Ann Arbor Reply at 6.

Once the presumption of lead plaintiff has been established, the question is not whether another party might do a better job of protecting the interests of the class than the presumptive lead plaintiff. The question is whether anyone can prove that the lead plaintiff will not fairly and adequately represent the interests of the class. In re Cendant Corp. Litig., 264 F.3d 201, 268 (3d Cir. 2001). Tulare has not carried its burden of proving that Iron Workers will not fairly and adequately represent the interests of the class.

Iron Workers has assuaged some of the concern about its financial situation by establishing that it is 70% funded, rather than 56% funded.  In addition, Iron Workers is an institutional investor, the kind of plaintiff that Congress anticipated would serve as lead plaintiff when it enacted the PSLRA.  See id. at 244; H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.) (observing that institutional investors will represent class interests more effectively than those plaintiffs with small amounts at stake).  There is no evidence of any antagonism between Iron Workers' interests and those of the class, apart from Tulare's speculation that Iron Workers might be tempted to settle early.  Iron Workers has said that it will try to maximize recovery for the class, and has retained counsel on a contingency basis so that it will not have to personally fund the litigation.  Oral Arg. Tr. at 11, 24; Iron Workers/Ann Arbor Supp. at 2.

Courts do reject presumptive lead plaintiffs on the basis of adequacy.  See In re Network Assocs., Inc. Sec. Litig., 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (rejecting a presumptive lead plaintiff because two of its sister entities were under criminal investigation and the court did not want an institution under such a "cloud" to occupy a fiduciary role for other class members); Andrada v. Atherogenics, No. 05-Civ-0061, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (finding that a potential lead plaintiff was inadequate when the plaintiff had purchased only options, not common stock like the rest of the

class); Weisman v. Darneille, 78 F.R.D. 669, 670-71 (S.D.N.Y. 1978) (rejecting a plaintiff's candidacy for class representative where the plaintiff was a felon convicted of the very securities statute he invoked in the lawsuit).  These situations are quite different, both in fact pattern and in degree of severity, than Iron Workers' financial situation.

Courts have also allowed presumptive lead plaintiffs far more questionable than Iron Workers to proceed.  See Levie v. Sears, Roebuck & Co., 496 F. Supp. 2d 944, 951 (N.D. Ill. 2007) (allowing appointment of a lead plaintiff who had been sanctioned by the National Association of Securities Dealers); Montoya v. Herley Indus. Inc., No. 06-2596, 2006 WL 3337485, at *2 (E.D. Pa. Nov. 14, 2006) (allowing the appointment of a lead plaintiff who had settled fraud charges with the SEC).  In Pirelli Armstrong Tire Corp. Employee Med. Benefits Trust v. Labranche & Co., Inc., 229 F.R.D. 395, 417 (S.D.N.Y. 2004), the court was concerned that a presumptive lead plaintiff did not have the resources or sophistication to pursue the litigation and named an institutional investor as co-lead plaintiff.  The presumptive lead plaintiff in Pirelli was a five-person day-trading business run out of the family home.  Iron Workers may be a relatively small pension fund, but it is an institutional investor with a full-time staff and an outside general counsel who has been with the fund for many years.  Tulare's concerns about Iron Worker's funding level and its potential impact on the litigation are

11

legitimate, but these concerns are insufficient to rebut the lead plaintiff presumption.  Oral Arg. Tr. at 21.

Finally, Tulare argues that Ann Arbor is inadequate as lead plaintiff because it claims losses that it cannot recover. According to the declaration attached to Iron Workers and Ann Arbor's motion, Ann Arbor held 2,700 shares of Radian stock at the beginning of the class period.  Under the "last-in, first-out," or LIFO method of loss calculation, those shares are ignored, because sales during the class period offset purchases during the class period.  Ann Arbor responds that its losses were calculated using a "first-in, first-out" or FIFO analysis, in which the shares most recently sold are offset against the shares held at the start of the class period.  Iron Workers/Ann Arbor Mot. Gross Decl; Tulare Opp. at 7 and n.3; Iron Workers/Ann Arbor Reply at 7.

The Court need not address which accounting method should be used for calculating financial interest at this juncture.  Courts have used both methods to calculate financial interest; the Third Circuit has not resolved whether any specific theory should always be used for loss causation analysis.  See In re Cigna Corp. Sec. Litig., 459 F. Supp. 2d 338, 352 (E.D. Pa. 2006).  Regardless of which method is used, Iron Workers and Ann Arbor together have the largest financial interest in the litigation, and even if Iron Workers were considered alone, it, not Tulare, would have the largest financial interest.  Ann

Arbor's interest under either method is still a loss smaller than Tulare's loss.  The use of one method does not transform Ann Arbor's interest into a gain, as was true in the case that Tulare cites, In re Comverse Tech., Inc. Sec. Litig., No. 06-1825, 2007 WL 680779, at *7 (E.D.N.Y. Mar. 2, 2007).

Tulare suggests in its opposition to Iron Workers and Ann Arbor's motion that it be appointed co-lead plaintiff with Iron Workers in Ann Arbor's place.  Tulare cites two cases to support this proposition.  In In re Oxford Health Plans, 182 F.R.D. 42, 45 (S.D.N.Y. 1998), the court appointed three movants as co-lead plaintiffs.  The presumptive lead plaintiff, ColPERA, had initially agreed to front all of the litigation costs.  The court, concerned about the scope of the litigation, decided that the three movants should pool their resources to better prosecute the case.  In Pirelli, discussed above, the court appointed co-lead counsel because the presumptive lead plaintiff was a small family business.  Neither of these cases is apposite to the situation here.  Iron Workers, as discussed above, fulfills the adequacy requirement of Rule 23 and has retained counsel on a contingency basis.  Iron Workers and Ann Arbor have moved together to be co-lead plaintiffs.  Any advantages to be gained in stability and joint decision making will presumably be gained by the co-lead structure already in place.  Tulare Opp. at 8.

Tulare has not rebutted Iron Workers and Ann Arbor's lead plaintiff presumption, and the Court will name Iron Workers and Ann Arbor as lead plaintiffs.

Under 15 U.S.C. § 78u04(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class.  Iron Workers and Ann Arbor have selected the law firm of Coughlin Stoia as lead counsel.  Coughlin Stoia is a 180-attorney securities class action firm with offices across the United States.  Iron Workers and Ann Arbor's motions have been filed by two partners from its New York office, David Rosenfeld and Samuel Rudman.  Mr. Rosenfeld ably represented Iron Workers and Ann Arbor at oral argument.  Coughlin Stoia's experience includes serving as lead counsel in In re Enron Corp. Sec. Litig., No. H-01-3624, 2005 U.S. Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005), In re Cardinal Health, Inc. Sec. Litig., No. C2-04-00575 (S.D. Ohio), and In re HealthSouth Corp. Sec. Litig., No. CV-03-BE-1500-S (N.D. Ala.).  The Enron court stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country.  It is not surprising that Defendants have not argued that counsel is not adequate.  Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities.

2006 U.S. Dist. LEXIS 43146, at *77 (S.D. Tex. June 5, 2006).  Coughlin Stoia achieved a $100 million settlement in In re AT&T

Corp. Sec. Litig., MDL No. 1399 (D.N.J.) in April of 2005.  In approving the settlement, the court said:

> Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during litigation substantiates this characterization.  [They] displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court.  Undoubtedly, the attentive and persistent effort of Lead counsel was integral in achieving the excellent result for the class.

Iron Workers and Ann Arbor have selected Bernard Gross as liaison counsel.  Bernard Gross has been active in securities litigation for 30 years.  The Court is familiar with the firm and is confident that it is qualified to serve as liaison counsel.  Tulare did not raise the issue of Iron Workers and Ann Arbor's choice of counsel in its arguments that Iron Workers and Ann Arbor were inadequate to serve as lead plaintiffs.  The Court will grant Iron Workers and Ann Arbor's motion to appoint Coughlin Stoia as lead counsel and Bernard Gross as liaison counsel.

An appropriate Order follows.

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOHN CORTESE, Individually    :      CIVIL ACTION
     and on Behalf of all     :
     Others Similarly         :
     Situated,                :
                              :
          v.                  :
                              :
RADIAN GROUP INC., S.A.       :      NO. 07-3375
     IBRAHIM, and C. ROBERT   :
     QUINT                    :
```

                                ORDER

        AND NOW, this 30th day of January, 2008, upon consideration of the movants' cross-motions for appointment as Lead Plaintiff, Lead Counsel, and Consolidation of Related Actions, the oppositions and replies thereto, and the supplemental submissions and oppositions thereto, IT IS HEREBY ORDERED for the reasons stated in the accompanying memorandum that:

        1)   Movant Iron Workers Local No. 25 Pension Fund ("Iron Workers") and the City of Ann Arbor Employees' Retirement System's ("Ann Arbor") Motion for Consolidation, Appointment as Lead Plaintiffs and for Approval of Selection of Lead and Liaison Counsel is GRANTED;

        2)   Movant Tulare County Employees' Retirement Association's Motion for Appointment as Lead Plaintiff, Appointment of Lead Counsel and Consolidation of Related Actions is DENIED;

3) The Court consolidates Civil Action Nos. 07-3375 and 07-3773 for all purposes, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, along with any future-filed or transferred tag-along actions.  The consolidated actions shall be captioned:  In re Radian Securities Litigation, Master File No. 2:07-cv-3375-MAM.

4) The Clerk of the Court is directed to close Civil Action No. 07-3773 for statistical purposes.

5) The lead plaintiffs shall file a consolidated complaint on or before March 17, 2008.

6) The defendants shall answer or otherwise respond to the consolidated complaint on or before May 1, 2008.

7) If the defendants move to dismiss the consolidated complaint, the lead plaintiffs shall file an opposition on or before June 16, 2008, and the defendants shall file a reply on or before July 16, 2008.


IT IS ALSO HEREBY ORDERED THAT:

I. APPOINTMENT OF LEAD PLAINTIFFS, LEAD COUNSEL, AND LIAISON COUNSEL

    1. The following plaintiffs and class members are appointed lead plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934: Iron Workers and Ann Arbor.

2.  Coughlin Stoia Geller Rudman & Robbins LLP is appointed to serve as lead counsel and the Law Offices of Bernard M. Gross, P.C. is appointed to serve as liaison counsel.

3.  With the approval of the Court, Lead Counsel shall assume and exercise the following powers and responsibilities:

    a.  To coordinate the briefing and argument of motions;

    b.  To coordinate the conduct of written discovery proceedings;

    c.  To coordinate the examination of witnesses in depositions;

    d.  To coordinate the selection of counsel to act as spokesperson at pre-trial conferences;

    e.  To call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;

    f.  To conduct all settlement negotiations with counsel for the defendants;

    g.  To coordinate and direct the preparation for trial, and the trial of this matter and to delegate responsibilities to selected counsel as may be required;

       h.    To receive orders, notices, correspondence, and telephone calls from the Court on behalf of all plaintiffs, and to transmit copies of such orders, notices, correspondence, and memoranda of such telephone calls to plaintiffs' counsel; and

       i.    To supervise any other matters concerning the prosecution or resolution of the case.

4.    With respect to scheduling and/or procedural matters, defendants' counsel may rely upon all agreements with Lead Counsel.

5.    No pleadings or other papers shall be filed or discovery conducted by any plaintiff except as directed or undertaken by Lead Counsel.

6.    Counsel in any related action that is consolidated with this consolidated actions shall be bound by this organizational structure of plaintiffs' counsel

II.    <u>SERVICE OF PLEADINGS AND OTHER PARTIES</u>

1.    Service by the defendants on plaintiffs of any papers shall be deemed to be complete for all purposes when a copy is served on Lead Counsel.

III.    <u>DOCUMENT PRESERVATION</u>

1.    During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody, or control, including computer-

4

generated and stored information, and materials such as computerized data and e-mail, containing information which is relevant to the subject matter of the pending litigation.

BY THE COURT:


<u>/s/ Mary A. McLaughlin</u>
MARY A. McLAUGHLIN, J.