UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re RADIAN SECURITIES LITIGATION | ) | Master File No. 2:07-cv-03375-MAM |
| | ) | |
| | ) | CLASS ACTION |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |

MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR SANCTIONS

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ..........................................................................1

II.    STATEMENT OF RELEVANT FACTS ........................................................3

III.   ARGUMENT ...........................................................................................6

     A.     Counsel's Communications with Croner Did Not Violate Rule 4.2......................6

           1.    Rule 4.2 Does Not Apply to Communications with Former Employees, Such as Croner ..................................................6

           2.    Croner is Not a Represented Person in the Securities Action..................10

           3.    Counsel Did Not Know that Croner Was a Represented Party in the ERISA Case..............................................................13

     B.     Defendants' Proposed Sanctions Are Unfounded ...............................15

           1.    Defendants' Request for Dismissal of the Amended Complaint Is Baseless..............................................................17

           2.    The Extreme Sanction of Disqualification of Counsel Is Inappropriate ..........................................................18

           3.    The Allegations in the Amended Complaint Based on the Investigator's Interview with Croner Should Not Be Stricken.................21

IV.    CONCLUSION .......................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ace Am. Ins. Co. v. Columbia Cas. Co.,*
No. 77, 2002 Phila. Ct. Com. Pl. LEXIS 95,
(Pa. C.P. 2002) .................................................................................................................19

*Action Air Freight, Inc. v. Pilot Air Freight Corp.,*
769 F. Supp. 899 (E.D. Pa. 1991) ................................................................................ 7, 8

*Ahern v. Board of Education of City of Chicago*,
No. 92 C 4074, 1995 WL 6804
(N.D. Ill. Nov. 14, 1995) ....................................................................................................8

*Aiken v. Business & Indus. Health Group*,
885 F. Supp. 1474 (D. Kan. 1995) ....................................................................................8

*Al Barnett & Son, Inc. v. Outboard Marine Corp.*,
611 F.2d 32 (3d Cir. 1979) ..............................................................................................17

*BML Group, Inc. v. U.S. Pizza, Inc.,*
No. 88-7463, 1992 U.S. Dist. LEXIS 6855
(E.D. Pa. May 18, 1992) ..................................................................................................16

*Cohen v. Oasin*,
844 F. Supp. 1065 (E.D. Pa. 1994) .................................................................................19

*Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*,
808 F. Supp. 1200 (E.D. Pa. 1992) .................................................................................19

*Derzack v. County of Allegheny*,
173 F.R.D. 400 (W.D. Pa. 1996).....................................................................................17

*Dillon Cos. v. Sico Co.,*
No. 92-1512, 1993 U.S. Dist. LEXIS 17450
(E.D. Pa. Nov. 24, 1993) ...................................................................................................6

*Dondore v. NGK Metals Corp.,*
152 F. Supp. 2d 662 (E.D. Pa. 2001)......................................................................... 12, 13

*Dondore v. NGK Metals Corp.*,
No. 00-1966, 2001 U.S. Dist. LEXIS 6268
(E.D. Pa. May 16, 2001)...................................................................................................13

*EEOC v. Hora, Inc.*,
239 Fed. Appx. 728 (3d Cir. 2007) ...............................................................................7, 20

**Page**

*Griffin-El v. Beard,*
No. 06-2719, 2009 U.S. Dist. LEXIS 81028
(E.D. Pa. Sept. 4, 2009) ................................................................. 10, 16, 18, 19

*Hanntz v. Shiley, Inc.,*
766 F. Supp. 258 (D.N.J. 1991) ................................................................. 14

*Harris v. City of Philadelphia,*
47 F.3d 1311 (3d Cir. 1995) ................................................................. 17

*Inorganic Coatings, Inc. v. Falberg,*
926 F. Supp. 517 (E.D. Pa. 1995) ................................................................. 21

*Johnson v. Radian Group, Inc. et al.,*
C.A. No. 2:08-cv-02007 (MAM) (E.D. Pa.) ................................................................. 1

*Klein v. Stahl GMBH & Co.,*
185 F.3d 98 (3d Cir. 1999) ................................................................. 16

*McCarthy v. Southeastern Pa. Trans. Auth.,*
772 A.2d 987 (Pa. Super. 2001) ................................................................. 21

*McGrane v. Reader's Digest Ass'n,*
822 F. Supp. 1044 (S.D.N.Y. 1993) ................................................................. 7

*Miller v. Material Sciences. Corp.,*
986 F. Supp. 1104 (N.D. Ill. 1997) ................................................................. 11

*Mims v. Chicester,*
281 A.D. 2d 256 (N.Y. App. Div. 1st Dep't 2001) ................................................................. 10

*Nesselrotte v. Allegheny Energy, Inc.,*
No. 06-01390, 2008 U.S. Dist. LEXIS 56411
(W.D. Pa. July 23, 2008) ................................................................. 16

*Penda Corp. v. STK, L.L.C.,*
No. 03-5578, 2004 U.S. Dist. LEXIS 13577
(E.D. Pa. July 16, 2004) ................................................................. 9, 21, 22

*Poulis v. State Farm Fire and Casualty Co.,*
747 F.2d 863 (3d Cir. 1984) ................................................................. 17

*Pu v. Greenthal Mgmt. Corp.,*
No. 08 Civ. 10084 (RJH) (RLE), 2009 U.S. Dist. LEXIS 19554
(S.D.N.Y. Mar. 10, 2009) ................................................................. 19

Page

*Research Corp. Techs., Inc. v. Hewlett-Packard Co.,*
    936 F. Supp. 697 (D. Ariz. 1996) ........................................................................ 19

*Shade v. Great Lakes Dredge & Dock Co.,*
    72 F. Supp. 2d 518 (E.D. Pa. 1999) .................................................................... 18

*U.S. v. Crawford,*
    60 Fed. Appx. 520 (6th Cir. 2003) ...................................................................... 12

*United States v. $8,221,877.16 in United States Currency,*
    330 F.3d 141 (3d Cir. 2003) ................................................................................ 17

*United States v. Miller,*
    624 F.2d 1198 (3d Cir. 1980) .............................................................................. 19

*Univ. Patents, Inc. v. Kligman,*
    737 F. Supp. 325 (E.D. Pa. 1990) .......................................................... 7, 16, 22


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(b)(1) ............................................................................................................ 9

American Bar Association Committee on Ethics and Professional Responsibility ................ 8, 13

Pennsylvania Rules of Professional Conduct
    Rule 4.2 ......................................................................................................... *passim*
    Rule 4.3 ................................................................................................................ 13

17 C.F.R. §240.10b-5 ................................................................................................ 9

Lead Plaintiffs Iron Workers Local No. 25 Pension Fund and City of Ann Arbor Employees' Retirement System (collectively, the "Lead Plaintiffs" or the "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' motion for sanctions. For the reasons set forth below, it is respectfully submitted that Defendants' motion should be denied.

## I.    PRELIMINARY STATEMENT

In a disingenuous attempt to hinder Plaintiffs' prosecution of this action, Defendants filed this motion for sanctions, which falsely accuses Plaintiffs' counsel, Coughlin Stoia Geller Rudman & Robbins LLP ("Counsel" or "Coughlin Stoia") of unethical conduct. Defendants' grounds for their motion for sanctions are entirely meritless and are premised on the misapplication of Rule 4.2 of the Pennsylvania Rules of Professional Conduct ("PRPC").

Defendants argue that, by engaging in communications with former Radian employee Robert Croner ("Croner"), Counsel violated Rule 4.2 of the PRPC by improperly interacting with a person it knew to be represented by counsel in the matter. However, Defendants' motion for sanctions is not supported in fact or law. First, at the time of Counsel's communication with Croner, he was ***not*** an employee of Radian. Second, Rule 4.2 does not prohibit communications with a former employee of a defendant company, such as Croner, who is not a party to the litigation and is not represented by an attorney in the matter. Croner is a defendant in an entirely separate ERISA action against Radian, entitled *Johnson v. Radian Group, Inc. et al.*, C.A. No. 2:08-cv-02007 (MAM) (E.D. Pa.), and is represented by the law firm of Schnader Harrison Segal & Lewis LLP ("Schnader Harrison")[1] in ***that case***. Finally, Counsel was unaware that Croner was a party to the ERISA litigation at the time Counsel's in-house investigator communicated with Croner. Indeed, prior to the filing of

---

[1]    Schnader Harrison is local counsel in the securities case. Notably, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") is lead counsel in the securities action and does not represent any party in the ERISA case.

Defendants' motion, neither Croner nor his counsel informed Coughlin Stoia that Croner was a represented party in the ERISA action.[2]

Because Counsel did not violate Rule 4.2, or any other ethical rule, there is no basis for dismissal of the action, disqualification of Counsel or any other sanction Defendants seek to impose. Even if Rule 4.2 was violated, which it was not, Defendants fail to demonstrate any prejudice in this case resulting from Counsel's communication with Croner.  Indeed, had Defendants been legitimately concerned with prejudice to Radian, they would not have waited more than four months after Counsel's communication with Croner to file this motion and would have immediately issued a letter notifying Counsel of the purported improper contact and requesting that no further contact be made.  *See* Declaration of Thomas G. Wilkinson, Jr. ("Wilkinson Decl.")[3] at ¶16, n.1, attached hereto as Ex. A.  Defendants' motion for sanctions is merely a strategic attempt to prevent the Court's consideration of relevant allegations and divert the Court's attention from the merits of this case.  Accordingly, Defendants' motion for sanctions should be denied.

---

[2]    Had Schnader Harrison contacted Plaintiffs by telephone or letter regarding their representation of Croner prior to the filing of this motion, they would have discovered that Counsel was unaware of Croner's representation in the ERISA case and that any contact with Croner was entirely proper.  Instead, Defendants chose to waste judicial resources by filing this frivolous motion, forcing Plaintiffs to retain an expert and respond to this motion.

[3]    Thomas G. Wilkinson, Jr. served as Chair or Co-Chair of the Pennsylvania Bar Association ("PBA") Legal Ethics and Professional Responsibility Committee for 11 years and remains an active member of that committee, as well as a longstanding member of the Philadelphia Bar Association Professional Guidance and Professional Responsibility Committees.  He is the Co-Editor of the Pennsylvania Ethics Handbook and edits ethics opinion summaries for publication in *The Pennsylvania Lawyer* and *Pennsylvania Bar News*.  Mr. Wilkinson is also a frequent author and lecturer on professional responsibility topics, including the scope and application of PRCP Rule 4.2 concerning contacts with represented persons and is an adjunct professor at Villanova University School of Law, where he teaches the course on professional responsibility.  Wilkinson Decl. at ¶3.

## II.    STATEMENT OF RELEVANT FACTS

Lead Plaintiffs filed the Consolidated Amended Class Action Complaint (the "Amended Complaint") on July 10, 2009. The Amended Complaint alleged that Defendants Radian Group Inc. ("Radian" or the "Company"), S.A. Ibrahim ("Ibrahim"), C. Robert Quint ("Quint") and Mark A. Casale ("Casale") (collectively, the "Defendants") made false and misleading statements regarding Radian's investment in Credit Based Asset Servicing and Securitization LLC ("C-BASS") in violation of federal securities laws. Specifically, Defendants materially misrepresented C-BASS's liquidity and financial position and failed to disclose that C-BASS was materially impaired.

In preparing the Amended Complaint, Counsel conducted an investigation, which included, in part, interviews of former Radian and C-BASS employees by Steven Peitler, Counsel's in-house investigator (the "Investigator"). *See* Declaration of Steven J. Peitler, ("Peitler Decl.") at ¶9, attached hereto as Ex. B. The Investigator was responsible for identifying former Radian and C-BASS employees and conducting interviews of such employees.[4] *Id*. at ¶¶5-6, 9. Among the former employees contacted by the Investigator was Croner, who served as Executive Vice President of Human Resources at Radian until May 2008, at which time Croner left the Company. *Id.* at ¶10. Croner was not employed by Radian at the time of the investigation. *Id.*

On April 16, 2009, almost a year after Croner's employment with Radian had terminated, the Investigator called Croner with regard to the present securities action, leaving a message in which he stated his name, that he was calling on behalf of Coughlin Stoia and that he was calling in reference to the federal securities class action against Radian. *Id.* The next day, on April 17, 2009, Croner returned the Investigator's phone call, at which time an interview ensued. *Id.* at ¶¶11-12. After the Investigator explained the nature of the inquiry and that he was calling on behalf of Coughlin Stoia,

---

[4]    At no point during the investigation did any attorney at Coughlin Stoia tell the Investigator to contact any specific former employee. Peitler Decl. at ¶7.

Croner agreed to and participated in an informal interview. *Id.* at ¶12. During the interview, Croner explained that he was a former Radian employee and served on Radian's executive team as Executive Vice President of Human Resources. *Id.* at ¶13. Croner stated that the executive team met regularly during the Class Period and that "C-BASS and C-BASS's financials were routine topics in Radian's executive meetings." *Id.* He also noted that the executive team was "familiar with what C-BASS was doing and why they were doing it." *Id.* According to Croner, Radian executives received quarterly reports and monthly earning reports for C-BASS. *Id.* Moreover, Croner noted that Defendants Quint and Casale sat on C-BASS's Board of Members and were extremely knowledgeable about C-BASS. *Id.* All of the information provided by Croner further corroborated what Counsel already knew or believed regarding Defendants' scienter as alleged in the pleadings. *See* Declaration of Samuel H. Rudman, ("Rudman Decl.") at ¶10, attached hereto as Ex. C. The Investigator never asked Croner to reveal any privileged information and Croner has never revealed any such information. Peitler Decl. at ¶19; Rudman at ¶20. Similarly, the Investigator never asked Croner about his role in the alleged securities fraud. Peitler Decl. at ¶19.

At some point during the interview, Croner suggested that the Investigator call Defendant Casale. *Id.* at ¶14. The Investigator explained that Coughlin Stoia is not permitted to communicate with Casale because he is a Defendant in the case and is represented by counsel. *Id.* At no time, however, did Croner disclose that he was a defendant in an ERISA case against Radian, nor did Croner ever mention the ERISA case at all. *Id.* at ¶17. In fact, the first time Counsel learned that Croner was a party in the ERISA case was upon receipt of Defendants' motion for sanctions. *See* Peitler Decl. at ¶21; Rudman Decl. at ¶15; Declaration of David A. Rosenfeld ("Rosenfeld Decl.") at ¶4, attached hereto as Ex. D; Declaration of Mario Alba, Jr. ("Alba Decl.") at ¶¶7-8, attached hereto as Ex. E.

Based on the interview with Croner and other former employees of Radian and C-BASS, Counsel drafted the Amended Complaint. Of the 242 paragraphs in the Amended Complaint, the following six paragraphs referred to Croner (identified as "CW 6"):

- CW 6 worked at Radian as Executive Vice President of Human Resources from 2004 through May 2008. As a member of Radian's executive team, CW 6 reported directly to Defendant Ibrahim and was responsible for managing all of Radian's human resources issues. ¶35.[5]

- According to CW 6, who served as Executive Vice President of Human Resources for Radian during the Class Period, Radian's executive team consisted of himself, Defendant Quint, Defendant Casale, Defendant Ibrahim, Steve Cooke (the President of Radian Assets) and Teresa Bryce (General Counsel during the Class Period). ¶129.

- CW 6 recalled that Radian's executive team met regularly, if not weekly, during the Class Period and that "C-BASS was a regular topic of conversation." According to CW 6, "C-BASS and C-BASS's financials were routine topics in Radian's executive meetings" and when Radian was "doing quarterly financial forecasts and budget updates [C-BASS's] information was always part of that." CW 6 also noted that the team was "familiar with what C-BASS was doing and why they were doing it" and that C-BASS would occasionally have a representative make a presentation to the Radian Board. CW 6 confirmed that executives at Radian received quarterly reports and monthly earning reports for C-BASS and that there were executive management calls that occurred twice per month among C-BASS, Radian and MGIC. ¶130.

- Radian's discussions regarding C-BASS became more frequent during the beginning of the Class Period. As CW 6 noted, around February, when Radian announced the merger with MGIC, the executive team's meetings were "almost exclusively focused on the recently announced merger with MGIC" and Radian's "ownership of C-BASS and how that impacted the merger." ¶131.

- According to CW 6, both Defendants Quint and Casale sat on C-BASS's Board of Members and were extremely knowledgeable about C-BASS. ¶133.

- According to CW 6, Radian wanted to sell C-BASS at the price that Radian's executive committee thought they would get for it and when it became apparent that Radian would not get the price they wanted for C-BASS, around May or June of 2007, "it was about getting any price for it." ¶146.

---

[5]    "¶__" herein references paragraphs in the Amended Complaint.

Defendants do not dispute these allegations. Instead, on August 24, 2009, without notifying Counsel of their intent to do so, Defendants filed this motion for sanctions.

## III.    ARGUMENT

### A.    Counsel's Communications with Croner Did Not Violate Rule 4.2

#### 1.    Rule 4.2 Does Not Apply to Communications with Former Employees, Such as Croner

In support of their motion for sanctions, Defendants assert that Counsel's *ex parte* communication with Croner constitutes a violation of Rule 4.2 of the PRPC. Rule 4.2 of the PRPC, entitled "Communication with Person Represented by Counsel," provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Pa. Rules of Prof'l Conduct R. 4.2 (Jan. 1, 2005).

While Defendants argue that Counsel "was not authorized to have [ ] *ex parte* communications and did not obtain the consent of Mr. Croner's lawyer for the communications" (Def. Mem. at 8-9),[6] they ignore Comment 7 to Rule 4.2, which provides:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. ***Consent of the organization's lawyer is not required for communication with a former constituent.***[7]  [Emphasis added.]

---

[6]    "Def. Mem. at __" refers to pages of Defendants' Brief in Support of their Motion for Sanctions.

[7]    On January 1, 2005, a series of amendments to PRPC Rule 4.2 were adopted, including Comment 7, which confirms that counsel may generally communicate with former employees of a represented organization. Wilkinson Decl. at ¶5. Prior to the amendments, PRPC Rule 4.2 was silent with respect to communications with former employees, but the majority view was to allow *ex parte* contact with former employees. *See, e.g., Dillon Cos. v. Sico Co.,* No. 92-1512, 1993 U.S.

Accordingly, while Rule 4.2 prohibits *ex parte* contacts with certain current employees of a corporate party, such as managerial employees or those whose statements may constitute an admission on the part of the organization, as Comment 7 to the Rule makes clear, *ex parte* contacts with former employees, such as Croner, are permitted under Rule 4.2 of the PRPC. As the Third Circuit has recently noted, "'[t]he underlying policy and Official Comment to the Rule [4.2] make clear that it was intended to forbid *ex parte* communications with all institutional employees whose acts or omissions could bind or impute liability to the organization or whose statements could be used as admissions against the organization.'" *EEOC v. Hora, Inc.*, 239 Fed. Appx. 728, 731 (3d Cir. 2007) ("*Hora*") (quoting *Univ. Patents, Inc.*, 737 F. Supp. at 328). Accordingly, Rule 4.2 does not bar communications with former employees of an organization "[b]ecause former managerial employees lack an existing agency relationship with the corporation" and, therefore, "cannot bind the corporation." *Action Air,* 769 F. Supp. at 903. "For, the same reason, a statement by a former employee may not be introduced as an admission of the corporation." *Id.*[8]

---

Dist. LEXIS 17450, at *14-*15 (E.D. Pa. Nov. 24, 1993) (noting that "a *per se* proscription against *ex parte* contact with former employees of an opposing party . . . is not warranted by either the language of Rule 4.2 or by any court decision interpreting it"); *Action Air Freight, Inc. v. Pilot Air Freight Corp.,* 769 F. Supp. 899, 904 (E.D. Pa. 1991) (holding that "Rule 4.2 permits [ ] counsel to make *ex parte* contacts with [ ] former employees" as long as opposing counsel "inquire[s] into the underlying facts giving rise to the dispute" and does not "solicit[] information protected by the attorney-client relationship"); *Univ. Patents, Inc. v. Kligman*, 737 F. Supp. 325, 328 (E.D. Pa. 1990) (concluding that, under Rule 4.2, an attorney is not precluded from contacting former employees).

[8]     "Former employees are ordinarily deemed outside the reach of the restriction that legal ethics imposes which bars counsel for an adversary of their former employer from approaching current employees directly - and this is so ***even if the former employees are represented by the employer's counsel***." *See McGrane v. Reader's Digest Ass'n,* 822 F. Supp. 1044, 1052 n.21 (S.D.N.Y. 1993) [Emphasis added.]

The American Bar Association, Committee on Ethics and Professional Responsibility ("ABA") has also taken the position that Rule 4.2 does not apply to former employees.[9] In March 1991, it issued a formal opinion addressing Rule 4.2 and its application to former employees, noting:

> While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers, [sic] the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expend its coverage to former employees by means of liberal interpretation.
>
> Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

ABA, Comm. on Ethics and Prof'l Responsibility, Formal Op. 91-359 (1991).[10]

As the case law suggests, Rule 4.2 was not designed to obstruct legitimate fact investigation or to protect third parties from potentially harmful evidence. Wilkinson Decl. at ¶18 (citing *Ahern v. Board of Education of City of Chicago*, No. 92 C 4074, 1995 WL 6804, at *2 (N.D. Ill. Nov. 14, 1995) ("Although a former employee may certainly damage a corporation by divulging facts which

---

[9]    The ABA's Model Rule 4.2 is identical to Rule 4.2 of the PRPC.

[10]    The ABA has since revised Model Rule 4.2, Comment 7, to clarify that "[c]onsent of the organization's lawyer is not required for communication with a former constituent." Even prior to this revision, the "clear majority of courts interpreting Rule 4.2 have held . . . that Rule 4.2 does not apply to communication with former employees of an organizational party who no longer have any relationship with the organization." *Aiken v. Business & Indus. Health Group*, 885 F. Supp. 1474, 1477 (D. Kan. 1995) (citations omitted). For example, in *Action Air*, the plaintiff filed a complaint alleging violations of PRPC and seeking to enjoin defense counsel's alleged *ex parte* contacts with its former employees. 769 F. Supp. at 900. The Pennsylvania District Court held that *ex parte* communications were permitted as long as the attorney-client privilege was not violated. *Id.* at 904. The court noted that "Rule 4.2's underlying policies do not justify the wholesale exclusion of former employees from the discovery process." *Id.* at 903. According to the court, "'[t]he interest in preventing inadvertent disclosure of privileged material does not justify a blanket ban on communication with the opposing party's former employees.'" *Id.*

ultimately give rise to liability, the possibility of that occurrence simply does not implicate the objectives of Rule 4.2"). This is especially true in the context of securities fraud class actions, which, under the Private Securities Litigation Reform Act ("PSLRA"), require a heightened pleading standard for actions brought under §10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder while, at the same time, mandate a stay of discovery during the pendency of a motion to dismiss. *See* 15 U.S.C. §78u-4(b)(1). With heightened pleading requirements and no discovery, confidential witnesses, in the form of former employees of a defendant corporation, are essential sources for plaintiffs in order to satisfy the heightened pleading requirements and to plead fraud claims with the required specificity. *See* Wilkinson Decl. at ¶17.

Accordingly, Counsel did not violate Rule 4.2 by diligently conducting an investigation regarding Plaintiffs' case and communicating with Croner, a former employee of Radian who no longer has supervisory authority over issues regarding Radian and whose statements may not bind the Company for purposes of this litigation.[11] Indeed, Defendants do not suggest that Croner has any connection to the securities allegations at issue in this matter or that liability may be imputed to Radian in this action as a result of Croner's statements. Nor do Defendants allege that Croner possesses any privileged information regarding Radian's legal strategies in this case, or that Counsel communicated with Croner for the purpose of obtaining such information.[12]

---

[11]    The facts here are in direct contrast to *Penda Corp. v. STK, L.L.C.*, No. 03-5578, 2004 U.S. Dist. LEXIS 13577 (E.D. Pa. July 16, 2004) (McLaughlin, J.), upon which Defendants heavily rely. In *Penda*, this Court held that the plaintiff's counsel violated PRPC Rule 4.2 where they engaged in *ex parte* communications with a ***current*** employee of the defendant corporation whose statements constituted an admission on the part of the company. *Id.* at *14. By contrast, here, at the time the Investigator contacted Croner, he was a former Radian employee and, thus, any statement made by him would not be deemed an admission by Radian. Moreover, unlike *Penda*, Counsel did not know that Croner was a represented person in the ERISA action.

[12]    Defendants' assertion that "Mr. Croner must communicate with Radian's counsel about these cases, given that he is Radian's co-defendant in one of them" is entirely baseless. *See* Def. Mem. at 8. While Croner most likely communicates with Schnader Harrison regarding the ERISA case

### 2.    Croner is Not a Represented Person in the Securities Action

Defendants' argument is based on the improper assumption that Rule 4.2 requires a *per se* prohibition against *ex parte* communications with any represented person.[13] While Rule 4.2 prohibits an attorney's communication "*about the subject of the representation* with a person the lawyer knows to be represented by another lawyer *in the matter*" (emphasis added), it does not prohibit communication with a person represented by an attorney in a wholly separate matter. *See* Comment 2 to PRPC Rule 4.2 ("This Rule applies to communications with any person who is represented by counsel concerning the matter to which the communication relates."); *see also Griffin-El v. Beard,* No. 06-2719, 2009 U.S. Dist. LEXIS 81028, at *20-*21 (E.D. Pa. Sept. 4, 2009) (holding that PRPC "Rule 4.2 is inapplicable and [counsel] did not violate any ethical rule by contacting" a witness regarding a parental rights termination case, who was also a defendant in a

---

because they represent him in that matter, defense counsel **may not** engage in communications with Croner about the instant securities litigation because such information is privileged. Moreover, unlike the ERISA case, Skadden is the lead defense counsel here and, by Defendants' own reasoning, to the extent that Skadden had any communications with Croner - a represented party - they would be in violation of PRPC Rule 4.2.

[13]    Defendants misconstrue Rule 4.2 by arguing that it prohibits a lawyer from "communicat[ing] with a person who has retained counsel with regard to the subject-matter with which the lawyer seeks to speak to the represented person." Def. Mem. at 5. This is not what Rule 4.2 states. Rule 4.2 prohibits *ex parte* communications "about the subject of the representation" with a person who the lawyer knows has retained counsel *in the matter*, not, as Defendants contend, a person who has retained counsel with regard to the subject matter. This is a very important distinction. Defendants similarly confuse "subject" and "matter" in their assertion that Croner "is represented by counsel in the matter for which plaintiffs' counsel engaged in *ex parte* communications with him: Radian's alleged financial wrongdoing involving securities laws." Def. Mem. at 5. Radian's alleged fraudulent misconduct in violation of securities laws was the subject of the Investigator's communication with Croner. However, the matter in which Croner is represented is the ERISA action, not the securities case. *Cf. Mims v. Chicester,* 281 A.D. 2d 256 (N.Y. App. Div. 1st Dep't 2001) (a defendant's criminal prosecution and FOIL request for records relating to his underlying indictment involved "the same 'subjects,' [but] are clearly different 'matters' within the meaning of the anti-contact rule").

separate case brought by counsel). Nor does Rule 4.2 prohibit communication about the subject matter of an action in which the individual is not represented. *See* Comment 4 to Rule 4.2.

Therefore, Croner's representation in the ERISA case, an entirely separate action, is not a valid basis for imposing sanctions or striking Plaintiffs' Amended Complaint. Croner is not a defendant in this case and, therefore, is not represented in ***this*** action. That Croner is not a represented person in the securities litigation entirely disposes of Defendants' arguments because Rule 4.2 only applies to persons represented ***in the matter***.

The facts of this case are similar to those of *Miller v. Material Sciences. Corp.*, 986 F. Supp. 1104 (N.D. Ill. 1997). Wilkinson Decl. at ¶20. The plaintiffs in *Miller* moved to file a second amended class action complaint alleging fraud in violation of Section 10(b) of the Exchange Act based on defendants' accounting irregularities and financial misrepresentations. *Miller,* 986 F. Supp. at 1105. The additional allegations in the second amended complaint were based primarily on an interview that one of plaintiff's counsel had with a former plant controller at the defendant company who was represented by an attorney "in connection with an ongoing investigation by the Securities and Exchange Commission ("SEC") into the accounting irregularities at [the company]." *Id.* at 1105-06. Objecting to the filing of plaintiff's second amended complaint, the defendants argued that the discussions with the former employee violated Rule 4.2 of the Rules of Professional Conduct for the United States District Court for the Northern District of Illinois, which prohibits communication "on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter." *Id.* at 1105. The court disagreed, holding that Rule 4.2 "did not preclude [plaintiff's counsel] from contacting [the former employee], and their discussions were ethically permissible" because the former employee "was not represented by counsel in the instant action." *Id*. at 1106-07.

Similarly, here, Croner is not represented by counsel in the ***instant action***. The securities class action and the ERISA action are distinct matters. As Defendants acknowledge, Croner is not a party in the securities class action and the two cases are not consolidated and are based on entirely different claims. Because Rule 4.2 protects an attorney-client relationship in a particular matter and aims to prevent the overreaching of other lawyers in that matter, Rule 4.2 applies only where the communication concerns the matter in which the person is represented. Croner's representation by Schnader Harrison in the separate ERISA action is, therefore, irrelevant for purposes of Rule 4.2 and the Investigator's communication with Croner on securities claims unrelated to the ERISA case were permissible. *See U.S. v. Crawford*, 60 Fed. Appx. 520, 535 (6th Cir. 2003) (holding that communications with a person represented by counsel in a separate but related criminal case were permitted where communications were based on an offense other than the offense for which the represented individual was indicted).

Defendants' inability to justify its motion for sanctions is evident by their reliance on cases dealing with unrelated facts and legal questions which are entirely inapplicable to the case at hand. For example, Defendants cite *Dondore v. NGK Metals Corp.,* 152 F. Supp. 2d 662 (E.D. Pa. 2001), in which the court held that the initiation of a class action prohibits defense counsel from contacting potential class members. In *Dondore*, defense counsel in an individual personal injury action sought to interview putative class members in a state court class action involving the very same conduct and brought by the same plaintiffs. *Id*. at 664. Denying defendants' request, the court held that *ex parte* communications between defense counsel and putative class members was not permitted because putative class members were impliedly represented by plaintiff's counsel and were parties to the

state action. *Id.* at 666.[14]  *Dondore* did not suggest, however, that counsel would be in violation of Rule 4.2 by contacting a person represented by counsel in an entirely different matter.  Indeed, on reconsideration, the court held that the defense counsel was not prohibited by Rule 4.2 from communicating with a former management employee who was a named defendant in a separate but similar individual negligence action.  *Dondore v. NGK Metals Corp.*, No. 00-1966, 2001 U.S. Dist. LEXIS 6268, at *3 (E.D. Pa. May 16, 2001).  Distinguishing between communications with current management employees and former management employees, the court held that Rule 4.2 does not prohibit communications with the latter.  *Id.* at *4.

### 3.    Counsel Did Not Know that Croner Was a Represented Party in the ERISA Case

As is clear by the language of Rule 4.2, an attorney attempting to communicate with a represented person, must "know" that the person is represented by another attorney in the matter to be discussed.  PRCP Rule 4.2.  Contrary to Defendants' assertions, the knowledge standard is not what counsel "should have known" concerning a witness's representation (Def. Mem. at 8, 10), nor does Rule 4.2 "imply a duty to inquire" as to whether a person is represented (Def. Mem. at 12).  ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-396; Wilkinson Decl. at ¶13.  Instead, the rule requires "actual knowledge of the fact of the representation."  *See* Comment 8 to PRCP Rule 4.2;[15] Wilkinson Decl. at ¶10 ("Under the ethics rules, 'knew' generally denotes actual knowledge of the fact in question, rather than constructive knowledge.").

---

[14]    Importantly, in *Dondore*, the parties agreed that the state action and the federal case concerned the same matter.  152 F. Supp. 2d at 665.

[15]    Comment 9 to Rule 4.2 further states that, "[i]n the event the person with whom the lawyer communicates is not known to be represented by counsel in the matter, the lawyer's communications are subject to Rule 4.3."  Rule 4.3 requires that an attorney dealing with a person who is not represented by counsel must not imply that the lawyer is disinterested.  Here, the Investigator did not only refrain from implying that Counsel was disinterested, but explicitly stated that he was calling on

Notwithstanding the fact that Croner was not represented by an attorney in *this* matter, Counsel was unaware that Croner was a party to the ERISA action and, therefore, did not know that he was represented in that action. While knowledge of representation may be inferred from the circumstances, "it cannot be assumed the corporation's counsel represents former employees." *Hanntz v. Shiley, Inc.,* 766 F. Supp. 258, 265 (D.N.J. 1991). "Indeed, the mere fact an individual is a former employee suggests he or she is unlikely to have a continuing relationship with either the corporation or its counsel." *Id.*

Here, there are no circumstances from which Counsel or the Investigator could have inferred Croner's representation. Coughlin Stoia does not represent any of the parties in the ERISA action, where Croner is an individual defendant. Rudman Decl. at ¶16. The Investigator contacted Croner as a former employee of Radian, whom Counsel was permitted to communicate with.[16] *See* Peitler Decl. at ¶¶4, 9-10. The Investigator identified himself and the purpose of his call both before the interview and when he initially left a message for Croner.[17] *Id.* at ¶¶10-11. It was Mr. Croner who willingly called the Investigator back and agreed to participate in an informal interview. *Id.* at ¶¶11-12. During his interview with the Investigator, Croner did not mention the ERISA case or the fact that he was a named defendant in that case. *Id.* at ¶17. Nor did Croner reveal that he was represented by an attorney. *Id.* Even when the Investigator told Croner that he could not contact Defendant Casale because he was represented by counsel in this case, Croner did not indicate that he

---

behalf of Counsel, who represented Plaintiffs in the securities action against Radian and that he wanted to discuss the case with Croner. *See* Peitler Decl. at ¶11.

[16]    Indeed, Counsel did not know that the Investigator would specifically contact Mr. Croner. The Investigator was merely told to contact former employees of either Radian or C-BASS.

[17]    Rule 4.2 violations are often predicated on the misrepresentation of the interviewer's identity and interest in the interview, such that the interviewee is left with the misimpression that he or she is being interviewed by counsel for the employer. Wilkinson Decl. at ¶12. Because there was no such misleading conduct here, there is no reason to disallow the use of the results of the interview.

too was represented by counsel, albeit in a different case. *Id.* at ¶¶14, 17. It was not until Defendants' motion for sanctions was filed, more than four months after the Investigator's communication with Croner, that Counsel became aware of Croner's representation. *Id.* at ¶21; Rudman Decl. at ¶15; Rosenfeld Decl. at ¶14; Alba Decl. at ¶¶7-8.

It is also worth noting that, at no time, did Counsel make any efforts to conceal the fact that the Investigator contacted Mr. Croner. In fact, Counsel expressly acknowledged its communication with Croner in the Amended Complaint, stating that the allegations in the Amended Complaint were based, in part, upon the interviews of former Radian employees including CW 6, who "worked at Radian as Executive Vice President of Human Resources from 2004 through May 2008." ¶35. Because there was only one individual serving as Radian's Executive Vice President of Human Resources at that time, it was apparent that CW 6 referred to Croner.

Because Mr. Croner was a former employee of Radian and did not indicate that he was represented by counsel, Counsel's communication with Mr. Croner was not prohibited by Rule 4.2. Instead, Counsel acted in good faith in its investigation of the alleged securities violations of Radian and did not intentionally attempt to communicate with a known represented person in this matter, or in any other matter.

**B.    Defendants' Proposed Sanctions Are Unfounded**

Even if the Court were to find that Counsel violated Rule 4.2, Defendants' proposed sanctions are inappropriate. It is well settled that not every violation of a disciplinary rule warrants a sanction and any suspected ethical violation may be reported to the proper disciplinary authority for further review. Wilkinson Decl. at ¶25. As the PRPC warns:

> [V]iolation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. . . . Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under

- 15 -

the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such a duty.

PRPC, *Scope*, at ¶19.

When choosing a proper sanction, a court must ensure that the sanction is "tailored to address the harm identified." *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 111 (3d Cir. 1999). A court must also "'consider the client's right to be represented by the counsel of his choice, as well as the opposing party's right to prepare and try its case without prejudice.'" *Nesselrotte v. Allegheny Energy, Inc.*, No. 06-01390, 2008 U.S. Dist. LEXIS 56411, at *27 (W.D. Pa. July 23, 2008) (quoting *Univ. Patents,* 737 F. Supp. at 329). Moreover, because motions for sanctions are often used as a litigation tactic, a court ruling on a motion for sanctions should carefully scrutinize all of the facts and circumstances before issuing a sanction such as disqualification of counsel. *See BML Group, Inc. v. U.S. Pizza, Inc.,* No. 88-7463, 1992 U.S. Dist. LEXIS 6855, at *3 (E.D. Pa. May 18, 1992) (noting "the longstanding tradition that plaintiffs' choice of counsel should not be negated without strong evidence, and of the use of disqualification motions as a litigation tactic").

However, before the Court even considers sanctions, Defendants must show that Counsel has actually violated Rule 4.2 and that Defendants have suffered substantial prejudice as a result of such violation. *See Griffin-El*, 2009 U.S. Dist. LEXIS 81028, at *33. Accordingly, Defendants have a heavy burden to overcome to obtain the sanctions they request: (1) dismissal of the Amended Complaint; (2) disqualification of Counsel; and (3) striking allegations based on the Investigator's interview with Croner.

1.    **Defendants' Request for Dismissal of the Amended Complaint
Is Baseless**

Defendants' argument that Counsel's communication with Croner is an "exceptional case"

warranting dismissal of the Amended Complaint is entirely baseless and contrary to precedential

case law.[18]  *See* Wilkinson Decl. at ¶24.  As the Third Circuit has noted, the "sanction of dismissal is

disfavored absent the most egregious circumstances."  *United States v. $8,221,877.16 in United*

*States Currency*, 330 F.3d 141, 161 (3d Cir. 2003).  This is because "defaults are drastic sanctions,

termed 'extreme' by the Supreme Court, . . . and are to be reserved for cases comparable to the

'flagrant bad faith' and 'callous disregard.'"  *Harris v. City of Philadelphia*, 47 F.3d 1311, 1330 n.

18 (3d Cir. 1995).

This case does not present an egregious violation of ethical rules, warranting the sanction of

dismissal.  As discussed above and in the attached expert declaration, no violation of Rule 4.2

occurred.  *See* Wilkinson Decl. at ¶23 ("There appears to be no evidence that the information related

in the Complaint as having been derived from an interview of Mr. Croner ("CW 6") either was the

result of an intentional violation of the disciplinary rule, caused any material prejudice or will

produce any taint at trial.").  Moreover, even if Counsel had violated Rule 4.2, it did not rise to the

level of "flagrant bad faith" and "callous disregard" that would justify dismissal.  At most, if there

was a violation of Rule 4.2, it was unintentional, as neither Counsel nor the Investigator knew that

---

[18]     In support of their argument, Defendants cite cases in which an abuse of discovery has taken
place. *See, e.g., Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984) (affirming
dismissal counsel engaged in a pattern of dilatory behavior and failed to file any answers to
interrogatories); *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 36 (3d Cir. 1979)
(court affirmed dismissal after appellants repeatedly failed to answer interrogatories, refused to
appear for depositions and failed to produce documents); *Derzack v. County of Allegheny*, 173
F.R.D. 400, 414 (W.D. Pa. 1996) (imposing the sanction of dismissal where plaintiffs engaged in a
"fraud on the court" by falsifying tax returns provided in discovery and lying in depositions).
Clearly, as no discovery has taken place at this stage, there can be no abuse of discovery.

Croner was represented in the ERISA case and had no reason to know of the representation because the ERISA case is an entirely separate case from the one at hand.

Finally, Defendants have suffered no prejudice from the Investigator's interaction with Croner. Counsel was entitled to communicate with Croner, who was a former Radian employee and who merely confirmed the allegations of Plaintiffs' prior pleadings based on interviews with other former Radian and C-BASS employees.[19] Mostly, Croner provided information regarding Radian executives' routine review of C-BASS's financial statements. Defendants do not, and cannot, dispute that this information was neither confidential nor protected by the attorney-client privilege. *See* Wilkinson Decl. at ¶21. While Radian may not have liked the fact that its former constituent willingly communicated with opposing counsel, this alone does not grant them standing to complain, nor does it warrant dismissal of the action or any other requested sanction.[20] Wilkinson Decl. at ¶18.

## 2. The Extreme Sanction of Disqualification of Counsel Is Inappropriate

Defendants' request for the sanction of disqualification of counsel is similarly unwarranted and unfairly jeopardizes Plaintiffs' right to choice of counsel in this matter. Disqualification of counsel is an "extreme sanction" and is generally disfavored by courts. *Griffin-El,* 2009 U.S. Dist. LEXIS 81028, at *10 (citations omitted); *see also Shade v. Great Lakes Dredge & Dock Co.,* 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999) (describing disqualification as an "extreme sanction" that should

---

[19]    Instead, Lead Plaintiffs and the putative plaintiffs, who had nothing to do with the alleged wrongdoing here, would suffer substantial prejudice if its Counsel of approximately two years were to be disqualified at this point in the litigation. *See* Wilkinson Decl. at ¶¶24, 31.

[20]    While Defendants contend that Radian's ability to defend the case is somehow prejudiced because of the Investigator's communication with Croner, they never specify how Radian is prejudiced other than to state that "Plaintiff's counsel has effectively converted Radian's witness into an unwitting witness for plaintiffs." Def. Mem. at 10. However, Croner - who was informed about the purpose of the Investigator's call and knew that his statements would be used as allegations in the Amended Complaint, but nevertheless agreed to an interview - was hardly an unwitting witness.

not be imposed lightly); *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992) (noting that "[d]isqualification is a harsh measure, and therefore, 'motions to disqualify opposing counsel generally are not favored.'").   "'This is so not only because disqualification robs one's adversary of [his] counsel of choice, but also because of the risk . . . that one could subvert the ethical rules in an attempt to use them as a procedural weapon.'" *Griffin-El*, 2009 U.S. Dist. LEXIS 81028, at *11.  As such, a party seeking disqualification of counsel bears a heavy burden of demonstrating that disqualification is appropriate.  *See Pu v. Greenthal Mgmt. Corp.,* No. 08 Civ. 10084 (RJH) (RLE), 2009 U.S. Dist. LEXIS 19554, at *10 (S.D.N.Y. Mar. 10, 2009).  As the Third Circuit has noted:

> [A] court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions.

*United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).  However, because disqualification of counsel is a severe remedy, the alleged misconduct must be egregious and the moving party must demonstrate that the alleged violation caused it to suffer substantial prejudice and that continued representation would be impermissible.  *See Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994); *see also Research Corp. Techs., Inc. v. Hewlett-Packard Co.*, 936 F. Supp. 697, 703 (D. Ariz. 1996) (finding an ethical violation but denying disqualification because "the nature of the ethical violation [was] not egregious" and "nothing indicate[d] that any confidential information related to the pending action has been received by" the counsel in question); *Ace Am. Ins. Co. v. Columbia Cas. Co.,* No. 77, 2002 Phila. Ct. Com. Pl. LEXIS 95, at *13 (Pa. C.P. 2002) (noting that "[d]isqualification . . . is a serious remedy that must take into consideration the important interest of a client's right to representation by counsel of his choice").

In *Hora*, which Defendants fail to even mention in their motion to dismiss, the Third Circuit reversed a district court disqualification order, concluding that the district court "abused its discretion in imposing the severe sanction of disqualification." *Hora*, 239 Fed. Appx. at 732. In *Hora*, the plaintiff's counsel contacted a low-level employee of the opposing defendant corporation without the consent of the corporation's attorney. Reversing the district court's disqualification order, the Third Circuit noted that "the draconian measure of disqualification was not warranted" where defendants were not prejudiced by an attorney's communications with an employee of the defendant company because the employee was not a represented person pursuant to Rule 4.2 and the company did not show prejudice, as the information obtained from the communication was produced during discovery. *Id.* at 731.

As explained above, Counsel has acted appropriately in its communication with Croner and has not violated Rule 4.2 or any other ethical rule. Croner was not represented in this matter, nor did Counsel know that Croner was represented in the ERISA case. Counsel has been forthright about the communication with Croner in the Amended Complaint and has not concealed any information obtained as a result of the communication. Even assuming, *arguendo*, that the Investigator's communications with Croner constituted a violation of Rule 4.2 (which it clearly did not), Defendants have failed to demonstrate how any of the statements made by Croner would cause Defendants to suffer prejudice in this case, much less severe prejudice, so as to warrant the drastic sanction of disqualification and thereby deny Plaintiffs the counsel of their choice. As noted above, as a former employee, Croner's statements cannot bind Radian and cannot be introduced as admissions by the Company. Moreover, Defendants have not identified any specific privileged information that was disclosed. The information provided by Croner merely corroborated the facts regarding Defendants' scienter alleged in Plaintiffs' prior pleadings and briefing. Thus, any alleged

violation of Rule 4.2 does not warrant disqualification.[21]  *See McCarthy v. Southeastern Pa. Trans.*

*Auth.*, 772 A.2d 987 (Pa. Super. 2001) (concluding that disqualification was not warranted in the

face of a claimed PRPC Rule 4.2 violation).

### 3.    The Allegations in the Amended Complaint Based on the Investigator's Interview with Croner Should Not Be Stricken

Defendants' final requested relief – the striking of all allegations based on the Investigator's

communication with Croner – is also improper.  In the Amended Complaint, only five paragraphs of

the 242 paragraph Amended Complaint were based on Croner's interview.  These allegations were

not new, but merely added additional detail to the original pleading.  Rather than deny these

allegations, Defendants take the incredible position that the allegations must be stricken because they

were based on Counsel's contact with a former Radian employee who is represented in a different

matter, and whose representation Counsel was unaware of until this motion was filed.  As discussed

in detail above, such communications are not in violation of the PRPC and, therefore, are entirely

appropriate.

While attorneys may be held ethically responsible for misconduct by their agents, such as an

in-house investigator, an attorney may nevertheless make use of evidence obtained by an

investigator as a result of an improper *ex parte* communication as long as the lawyer was "not

complicitous" in causing the improper communication.  Wilkinson Decl. at ¶32.  Accordingly, even

---

[21]    Even in *Penda*, which Defendants cite throughout their motion for sanctions, this Court refused to disqualify local counsel because the *ex parte* interview of a current managerial level employee did not sufficiently prejudice the company's "ability to litigate the merits of the core issues of this case."  2004 U.S. Dist. LEXIS 13577, at *21.  The facts here are also distinguishable from *Inorganic Coatings, Inc. v. Falberg*, 926 F. Supp. 517 (E.D. Pa. 1995), in which plaintiff's counsel was disqualified after an attorney directly communicated with one of the defendants in the litigation and spoke to him about "numerous matters pertinent to the litigation," including settlement.  *Id.* at 520.  By contrast, here, Counsel did not speak to a represented party in the matter.

if this Court finds that the Investigator engaged in misconduct, which it respectfully should not, the allegations in the Amended Complaint based on Croner's interview should not be striken. *Id.*

Defendants have failed to assert any justification for their requested sanction of striking information obtained from Croner in the Amended Complaint. Defendants' request to strike the allegations in the Amended Complaint are merely an attempt by Defendants to conceal the facts of this case from the Court. Sanctions are reserved for situations that unquestionably warrant them. As Defendants have failed to carry out their burden of showing that any communication with Croner was in violation of Rule 4.2, this is not one of those situations. Therefore, Defendants' motion for sanctions should be denied.[22]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for sanctions in its entirety.

---

[22]    Defendants also argue that Counsel must turn over its notes and other materials stemming from the Investigator's contact with Croner. However, Defendants are not entitled to these materials, which are highly protected work-product. In the absence of a clear and egregious violation of Rule 4.2, courts generally do not order the turnover of attorney work product. *See, e.g., Penda*, 2004 U.S. Dist. LEXIS 13577 at *20 n. 6 (ordering the turnover of documents, recordings and other materials where counsel contacted a current employee of a represented party without notifying the employee of the purpose of her call and that she was calling on behalf of a law firm); *Univ. Patents, Inc.*, 737 F. Supp. at 329 (ordering production of attorney work product where counsel contacted current employees of the represented university and counsel "circumvent[ed] discovery procedures in order to gain an unfair advantage in litigation"). Unlike those blatant cases in which the turnover of attorney work product has been ordered, here, there has been no violation of Rule 4.2 or any other ethical rule. Moreover, the declaration provided by the Investigator describes exactly what took place and what was said during the informal interview with Croner. If Schnader Harrison is not satisfied with the Investigator's declaration of the events that occurred during the communication, they can ask their client, Mr. Croner, to supply them with additional facts regarding the interview.

DATED:  September 22, 2009

LAW OFFICES BERNARD M. GROSS, P.C.
DEBORAH R. GROSS
ROBERT P. FRUTKIN


*/s/ Deborah R. Gross-DG639*
DEBORAH R. GROSS

Wanamaker Building, Suite 450
100 Penn Square East
Philadelphia, PA 19107
Telephone:  215/561-3600
215/561-3000 (fax)

*Liaison Counsel*

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

*Lead Counsel for Plaintiffs*

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

VANOVERBEKE MICHAUD
   & TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

*Additional Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Deborah R. Gross, hereby certify that on September 22, 2009, I caused a true and correct copy of the attached:

Memorandum of Law in Opposition to Defendants' Motion for Sanctions

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to all additional counsel on the attached service list.

   /s/ *Deborah R. Gross – DG639*   
Deborah R. Gross

RADIAN (LEAD)

Service List - 9/22/2009     (07-0167)

Page 1 of 1

## Counsel For Defendant(s)

David  Smith
Theresa E. Loscalzo
Schnader, Harrison, Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103
   215/751-2000
   215/751-2205 (Fax)

Richard L. Brusca
Leslie J. Abrams
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005-2111
   202/371-7000
   202/393-5760 (Fax)

## Counsel For Plaintiff(s)

Samuel H. Rudman
David A. Rosenfeld
Mario  Alba Jr.
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
   631/367-7100
   631/367-1173 (Fax)

Deborah R. Gross
Robert P. Frutkin
Law Offices Bernard M. Gross, P.C.
100 Penn Square East, Suite 450
Wanamaker Bldg.
Philadelphia, PA  19107
   215/561-3600
   215/561-3000 (Fax)

Cynthia J. Billings
Sullivan, Ward, Asher & Patton, P.C.
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI  48075
   248/746-0700
   248/746-2760 (Fax)

Michael J. VanOverbeke
Thomas C. Michaud
VanOverbeke Michaud & Timmony, P.C.
79 Alfred Street
Detroit, MI  48201
   313/578-1200
   313/578-1201 (Fax)