UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CLASS ACTION |
| | : | |
| RADIAN SECURITIES LITIGATION | : | Master File No. 07-3375 |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR SANCTIONS**

**INTRODUCTION**

We learned for the first time when plaintiffs' counsel filed their consolidated amended class action complaint ("CACAC") that plaintiffs' counsel had interviewed our client Robert Croner without our permission, and then had included the purported substance of that interview in the CACAC. Soon thereafter the purported substance of that interview was repeated in the amended complaint filed in *Johnson v. Radian*, where our client Mr. Croner is named as a defendant. We responded immediately by moving for sanctions in this case, seeking dismissal of the CACAC, disqualification of plaintiffs' counsel and discovery of the improper interview. We submit this reply memorandum in further support of our motion for sanctions.

The response by plaintiffs' counsel admits that their in-house investigator (who they claim was so loosely supervised that they had no idea what they had done until our motion for sanctions brought it to their attention) interviewed our client on the facts which form the subject matter of our representation. However, utilizing woefully (and no doubt strategically) incomplete declarations that conspicuously omit any disclosure of significant facts, such as whether counsel for the plaintiffs in this case possessed or had reviewed copies of the complaint and the Rule 12(b)(6) motion papers in the *Johnson* case or had entered into a common interest

agreement or have otherwise cooperated and shared information with counsel for the *Johnson* plaintiff, they then attempt an after-the-fact justification of their conduct by arguing:

- They were permitted to have *ex parte* contact with Mr. Croner by virtue of his status as a former (rather than current) employee of Radian;

- They did not speak with a represented party in a "matter," as prohibited by Pennsylvania Rules of Professional Conduct ("RPC") 4.2, because the related *Cortese* and *Johnson* cases are "wholly separate" matters;

- They did not violate RPC 4.2 because they did not have actual knowledge that Mr. Croner was represented by counsel at the time they contacted him; and

- The defendants have not been sufficiently prejudiced by plaintiffs' ethical violation to warrant the sanctions requested.

We will demonstrate in this reply memorandum that none of the arguments advanced by plaintiffs' counsel has the slightest merit and the motion for sanctions should be granted.

## ARGUMENT

### I. PLAINTIFFS' COUNSEL'S *EX PARTE* COMMUNICATION WITH MR. CRONER VIOLATED RPC 4.2.

#### A.    Mr. Croner's Status As A Former Employee of Radian Is Irrelevant.

Plaintiffs' extended discussion of Mr. Croner's status as a former (as opposed to current) employee of Radian is a smokescreen and has absolutely nothing to do with whether plaintiffs' counsel violated RPC 4.2 by interviewing him.  Defendants' motion is not predicated on Mr.

Croner's employment by Radian.  Rather, it is predicated on the undisputable fact that Mr. Croner was and is our client and plaintiffs' counsel interviewed him on the facts common to this case and the *Johnson* case (in which he is a defendant) without our permission.[1]

### B.    Plaintiffs' Counsel Had Actual Knowledge Under RPC 4.2 That Mr. Croner Was Represented By Counsel.

Plaintiffs' counsel argue that they did not have actual knowledge that Mr. Croner was represented by counsel.  That argument is based upon the unlikeliest of supposed facts, as plaintiffs' counsel claim to have located Mr. Croner by an internet search and almost any internet search of "Robert Croner" and "Radian" brings up multiple links to the *Johnson* case.[2] Moreover, as noted earlier, plaintiffs' counsel conspicuously omit from their declaration that they had not obtained or reviewed the pleadings and motion papers in the *Johnson* case or had not entered into a common interest agreement or otherwise cooperated and shared information with counsel for the *Johnson* plaintiff, any of which would have provided actual knowledge. Accordingly, plaintiffs' counsel's denials of actual knowledge should be rejected as insufficient.

---

[1]    Similarly irrelevant are the repeated assertions by plaintiffs and their expert that defense counsel did not correspond with plaintiffs' counsel about their violation of Rule 4.2 before pursing this motion.  There is absolutely no requirement that counsel attempt to resolve an adversary's ethical violation prior to seeking redress for that violation.  Moreover, there was no reason to communicate, as the damage at that point had been done.  Defense counsel did not learn of the improper interview until four months later, when the CACAC was filed.  The improper interview of Mr. Croner already had been conducted, the purported disclosures by Mr. Croner, with attribution to him, already had been incorporated into and made public by the filing of the CACAC, and counsel in the *Johnson* case already had copied the allegations from the CACAC into their amended complaint.  Indeed, given the position they take in their opposition – that counsel did nothing wrong and would do it again – any correspondence would have been futile.

[2]    See *infra*, note 8.

PHDATA 3240312_1

However, the factual dispute over what plaintiffs' counsel actually had in their possession, actually read or actually heard need not be resolved for there to be a violation of RPC 4.2. RPC 1.0(f) expressly provides that "knowledge may be inferred from circumstances." RPC 1.0(f). Comment 8 to RPC 4.2 expressly incorporates RPC 1.0(f), and concludes: "the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." RPC 4.2, Comment 8. The only way plaintiffs' counsel could possibly have been unaware that Mr. Croner was represented was by deliberately blinding themselves to the obvious. (Exh. A, Declaration of Geoffrey Hazard, ¶ 42)[3]

The circumstances demonstrating that plaintiffs' counsel could only have avoided knowing that Mr. Croner was represented by another lawyer by closing their eyes are established by undisputable public record. This case was commenced on August 15, 2007. The *Johnson* case was filed eight months later, on April 29, 2008. Mr. Croner was named as a defendant in the *Johnson* case, and Schnader Harrison Segal & Lewis LLP attorney David Smith (who also is counsel of record in this case) entered an appearance on his behalf. When the *Johnson* case was filed, it was identified as "related" to and assigned to the same judge as this case.[4] Counsel for

---

[3]    Professor Hazard is a Distinguished Professor of Law, Hastings College of the Law, University of California; and Trustee Professor of Law, University of Pennsylvania School of Law, University of Pennsylvania. He is a member of the bars of California and Pennsylvania. He previously taught at Yale, Harvard, the University of Chicago and the University of Michigan. For over forty years he has studied, done research, taught, practiced and done professional consulting in the field of professional ethics. He has been recognized as an expert in that field in many jurisdictions, including the Commonwealth of Pennsylvania. A copy of his professional biography is attached to his Declaration as Exhibit A.

[4]    "At the time of filing any civil action or proceeding, counsel shall indicate on the appropriate form whether the case is related to any other pending… action of this court." Local Rule 40.1(b)(3). "If the fact of relationship is indicated on the appropriate form at the time of
*...Continued*

PHDATA 3240312_1

plaintiffs have not objected – and could not reasonably have objected – to the related case

designation.  (Exh. B, *Cortese* Associated Cases Query; Exh. C, *Johnson* Associated Cases

Query)

Motions to dismiss were filed in both cases, including a motion that the Schnader lawyers

filed on behalf of Mr. Croner in the *Johnson* case.  (Exh. D, *Johnson* Docket, #13)  That motion

specifically addressed Mr. Croner's status and sought dismissal of the claims against him.

On November 14, 2008, this Court issued substantially identical orders in the *Cortese* and

*Johnson* cases, scheduling a "single hearing" on the motions to dismiss.  The *Cortese* order

stated:  "It makes sense to schedule a single hearing at which to discuss the defendants' Motion

to Dismiss, as well as the defendants' motion to dismiss the complaint in the related [ERISA]

case, <u>Johnson v. Radian Group, Inc</u>., No. 08-2007.  If any party disagrees, said party should

inform the Court."  (Exh. E)  The language in the *Johnson* order was identical, but substituted

*Cortese* as the related case.  (Exh. F)  It is beyond dispute that those Orders actually directed all

counsel's attention to the related cases.

To comply with the November 14 Orders, counsel for the parties must have, at a

minimum, reviewed the dockets, the complaints and the briefing on the motions to dismiss to

comply with the Court's direction to inform the Court if they disagreed with the decision to

---

*Continued from previous page*

> filing, assignment clerk shall assign the case to the same judge to whom the earlier numbered
> related case is assigned… If the judge receiving the later case is of the opinion that the
> relationship does not exist, the judge shall refer the case to the assignment clerk for
> reassignment…"  Local Rule 40.1(c)(1).  *Johnson* was not referred for reassignment and has
> remained listed as related to this matter since it was filed.

schedule "a single hearing at which to discuss" defendants' motions to dismiss the *Cortese* and *Johnson* cases. Those public records unquestionably reveal that the cases arise out of the same purported facts, that Mr. Croner is a defendant in the *Johnson* case, and that Mr. Croner was represented by the Schnader law firm. (Hazard Dec., ¶ 15) As noted earlier, plaintiffs' counsel have not denied possessing or reviewing those materials.

In the absence of any objection by any party, this Court conducted a "single hearing" on the motions to dismiss the two related cases on December 19, 2008. The Coughlin lawyers attended the "single hearing." They also ordered a copy of the transcript, which they received on January 8, 2009. (Exh. G, Declaration of Theresa E. Loscalzo, ¶¶ 3,4) The transcript became publically available through PACER on March 31, 2009. The transcript for the "single hearing" bears the caption of this case and the *Johnson* case and divides oral argument into two portions, the "SECURITIES portion" and the "ERISA portion." (Exh. H, December 17, 2008 Transcript) The Court specifically inquired about Mr. Croner during the ERISA portion of the argument. (Transcript, p. 92-93) ("Well, Mr. Croner is what? What's his role?").

Counsel for plaintiffs seek to justify their alleged lack of knowledge by reference to the Coughlin lawyers' early departure from the "single hearing" because of a threatened snow storm.[5] However, that attempted excuse rings hollow, where: (a) the docket, pleadings and briefs

---

[5]    The transcript at page 60 reflects that Mr. Rudman of the Coughlin firm requested permission to leave before the ERISA argument because of a looming snow storm; however plaintiffs' attorney Deborah Gross (against whose firm the sanctions motion is also pending) was present, and presumably for the entire argument because there is no indication of her departure in the transcript. It is noteworthy that lawyers from the Coughlin firm provide affidavits that they did not know Croner was a defendant in, and represented in, the ERISA case, but there are no similar affidavits from any lawyers at the Gross firm, including Ms. Gross, who is entered as "lead" counsel for the plaintiffs in *Cortese*.

counsel must have reviewed before the argument plainly disclose Mr. Croner as a represented party; (b) co-counsel for plaintiffs, Ms. Gross, did not leave early; and (c) the transcript of the argument clearly discloses the discussion regarding Mr. Croner.

Under these circumstances, there is no basis for counsel's claim that they did not know that Mr. Croner was a defendant in the *Johnson* case and that he was represented by the Schnader firm.  Nevertheless, one week after the Motion to Dismiss the Complaint in this Securities case was granted on April 9, 2009, plaintiffs' counsel's in-house investigator contacted Mr. Croner to interview him about the common facts underlying this case and the *Johnson* case – *without even asking him if he was represented by counsel*.  (Peitler Aff., ¶ 10)  Four months later, plaintiffs attempted to revive their dismissed claims in this case by including in their CACAC what they claim were Mr. Croner's uncounselled disclosures.  (Hazard Dec., ¶ 25)

The sanctions sought by defendants – dismissal of the CACAC, disqualification of plaintiffs' counsel and discovery of the interview of Mr. Croner – should be granted as, on these facts, plaintiffs' counsel had to have known – or could only have avoided knowing by closing their eyes – that Mr. Croner was a represented party and could not be interviewed without permission of his counsel.  (Hazard Dec., ¶ 42)

### C.    Plaintiffs' Counsel's "In the Matter" Argument Should Be Rejected.

Plaintiffs' counsel seek to avoid the prohibition against communicating with our client without our permission by arguing that their interview of Mr. Croner on the facts common to this and the *Johnson* case was in a "wholly separate" matter.  Thus, according to plaintiffs' counsel, they can interrogate our client about the facts of the case in which we have entered our appearance for Mr. Croner, so long as their purpose in doing so is to prosecute another case.

Plaintiffs' counsel's argument makes no sense.  RPC 4.2 forbids a lawyer from communicating "about the subject of the representation with a person the lawyer knows to be represented in the matter."  Hence, even if the scope of our representation somehow was limited by our entry of appearance in the *Johnson* case, which it is not, plaintiffs' counsel inarguably interviewed our client on the subject matter of that representation.

However, there is no basis to contend that our representation of Mr. Croner is limited to the defense of the *Johnson* case.  Our representation of Mr. Croner is, at a minimum, to protect him from potential liability arising out of the facts alleged in the *Johnson* case, which are essentially the same as the facts alleged in this case.  In other words, we could not, consistent with our professional obligations to Mr. Croner, defend him from liability in the *Johnson* case, but on the same facts "throw him under the bus" in this case.  We must protect his interests in both cases.  That includes protecting him from:

> possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounselled disclosure of information relating to the representation.

RPC 4.2, comment 1.  Indeed, if this motion for sanctions is not granted, the consequence will be precisely as predicted by comment 1.  There will be in both this case and in the *Johnson* case an ongoing factual dispute over what Mr. Croner did or did not say to plaintiffs' counsel's investigator.

Plaintiffs' counsel's argument, if accepted, would eviscerate the protection of Rule 4.2 in complex multi-party litigation.  (Hazard Dec., ¶ 32)  There are often multiple complaints in complex multi-party litigation in which, as here, there is not perfect uniformity in the selection of

PHDATA 3240312_1

defendants. (*Id*.) Under plaintiffs' argument, the firms representing the plaintiffs in such litigation can avoid the prohibition of Rule 4.2 by allocating interviews of represented persons to the law firm that did not name the represented persons as defendants in the complaints they filed. (*Id*.)

For that reason, among others, in the context of complex multi-party litigation the definition of the phrase "in the matter" must be as broad as the definition of "related cases" under the Local Rules. Pursuant to Local Rule Civ. Pro. 40.1(b)(3)(A), a "related case" is one that "involves the same issue of fact or grows out of the same transaction," as the *Johnson* and *Cortese* cases do here. (Hazard Dec., ¶¶ 33, 34) Moreover, the plain meaning of the word "matter" includes all of the substantial and material facts relevant to the representation, and the word "matter" is defined in Black's Law Dictionary, Fifth ed. as:

> Substantial facts forming the basis of claim or defense; facts material to issue; substance as distinguished from form; transaction, event, occurrence; subject-matter of controversy. See **Issue, Material Fact; Matter in issue; Subject-matter**. (emphasis in original).

(Hazard Dec., ¶ 36) A "matter" plainly encompasses any discussion which overlaps in whole or in part with contested fact issues that may be the subject of the litigation. (Hazard Dec., ¶ 37) Thus, there is no doubt that the Securities case and the ERISA case are not "wholly separate" matters, as plaintiffs contend. (Hazard Dec., ¶ 38)[6]

---

[6]  Plaintiffs' narrow view of Rule 4.2 also defies Comment 2, which states: "This Rule applies to communications with any person who is represented by counsel concerning the matter to which the communication relates." RPC 4.2, comment 2. (Hazard Dec., ¶ 33) When discussing the fact that Rule 4.2 provides sparse guidance on the question of whether

*...Continued*

PHDATA 3240312_1

None of the cases discussed by plaintiffs' counsel can justify their interview of Mr. Croner. As defendants pointed out in their opening brief, the holding in *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662 (E.D. Pa. 2001) is directly on point. There, defense counsel could not communicate *ex parte* with witnesses who were putative class members in a related state court action because they were represented by class counsel in that case. *Id*. at 666. Similarly, plaintiffs' counsel in this case was not permitted to contact Mr. Croner because he is a represented party in a related action. Plaintiffs seek to diminish the authority of *Dondore* by grossly mischaracterizing a later ruling in that case. *See Dondore v. v. NGK Metals Corp.*, 2001 U.S. Dist. LEXIS 6268 (E.D. Pa. 2001). Plaintiffs falsely contend that on reconsideration of its prior ruling, the court distinguished between current and former employees of a corporate party and permitted *ex parte* contact with the latter, regardless of whether they are represented in a related matter. (Pl's Br. at 13) To the contrary, the court reaffirmed with one exception not applicable here that *ex parte* contact with members of the putative class in the related action was forbidden, including those members who were former employees of the corporate defendant. *Id*. at *15.

Having found no authority within this jurisdiction to rebut defendants' argument that the Securities and ERISA matters are sufficiently related to constitute a "matter" under Rule 4.2,[7]

---

*Continued from previous page*

"matter" is a single litigation or applies more broadly to any discussion that overlaps with any contested issue or fact that is the subject of the litigation, plaintiffs' own expert claims that "the language employed [in Comment 2] may be lacking in specificity to allow for differing fact patterns" (Wilkinson Aff, ¶ 19), implicitly conceding that "matter" is not restricted to a single litigation.

[7] Plaintiffs' comparison of their counsel's conduct to the conduct in *Griffin-El v. Beard*, 2009 U.S. Dist. LEXIS 81028 (E.D. Pa. Sept. 4, 2009) is misleading. They cite *Griffen-El* for the

*...Continued*

PHDATA 3240312_1

plaintiffs rely on authority from outside the jurisdiction, citing the inapposite case of *Miller v. Material Sciences Corp.*, 986 F. Supp. 1104 (N.D. Ill. 1997). In *Miller*, plaintiffs' counsel contacted a witness who was represented in a related SEC investigation by attorney Hutton. *Id.* at 1106. Significantly, unlike plaintiffs' counsel here, plaintiffs' counsel in *Miller* first asked the witness if he had a lawyer and when the witness replied that Hutton was his lawyer, counsel terminated the conversation. *Id.* The substance of subsequent communications between plaintiffs' counsel and Hutton regarding whether Hutton represented the witness in the *Miller* case were disputed, but it was undisputed that the witness later insisted that he was not represented in the *Miller* case and wanted to cooperate with plaintiffs in exchange for a promise not to be named as a defendant. *Id.* The court held that plaintiffs' counsel did not violate Rule 4.2 because he "did all that would be expected under the circumstances" and was allowed to rely on the witness's insistence that he did not have representation. *Id.* at 1107. In this case, by contrast, plaintiffs' counsel never even asked Mr. Croner if he was represented and are attempting to rationalize their behavior after the fact.[8]

---

*Continued from previous page*

proposition that a lawyer has not violated Rule 4.2 when he contacts a person who is a witness in one of his cases and who is an adverse defendant in another of his cases. (Pls.' Br. at 10-11) In *Griffin-El*, two lawyers from the Morgan Lewis law firm handling a parental rights case communicated with a records custodian in a prison records department. Unbeknownst to them, the records custodian also happened to be a defendant in a prisoner rights case where the plaintiff was represented by another lawyer in the Morgan Lewis firm. Based on those circumstances, the Court ruled that Rule 4.2 was not violated. *Id.* at *19-21. The parental rights and prisoner rights cases were so completely unrelated, as was the role that the records custodian played in the two cases, that a comparison to these related Securities and ERISA cases is patently absurd.

[8] Plaintiffs also cite the inapplicable case of *Mims v. Chichester*, 281 A.D.2d 256 (N.Y. App. Div. 2001), for the proposition that while the "subject" of the Securities case and the ERISA cases may be similar, they are separate "matters" under Rule 4.2. (Pls.' Br. at 10 n.13) In

*...Continued*

PHDATA 3240312_1

**II.    PLAINTIFFS' COUNSEL FAILED TO ADEQUATELY SUPERVISE THEIR INVESTIGATOR, IN VIOLATION OF RPC 5.3.**

Plaintiffs' counsel claim to have delegated responsibility for interviewing former employees of Radian to their in-house investigator Steve Peitler.  (Peitler Aff., ¶ 5)  That plaintiffs' counsel did not specifically direct their in-house investigator to interview Mr. Croner is not a defense to their misconduct.  (Hazard Dec., ¶ 46)  Rule 5.3 provides that "a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."  RPC 5.3(b).  Plaintiffs' counsel failed to supervise Mr. Peitler to ensure that his conduct was compatible with their professional obligations not to speak to a represented witness and not to violate attorney-client privilege.  An attorney who fails to take sufficient precautionary steps to guard against infractions is in violation of Rule 5.3.  (Hazard Dec., ¶ 47)

Plaintiffs' counsel delegated to Mr. Peitler the responsibility of identifying Radian's former employees and interviewing them without ensuring that he complied with their ethical obligations.  Plaintiffs' counsel did not give Mr. Peitler any guidance as to who he should interview, stating that "at no time" did they tell him what former Radian employees to contact.  (Pls.' Br. at 3; Peitler Aff., ¶ 7)  Plaintiffs' counsel did not inform Mr. Peitler as to the identities of the parties in the related *Johnson* case.  In fact, they did not even inform Mr. Peitler that the

---

*Continued from previous page*

*Mims*, a criminal defendant sought production of records from the prosecutor's office under the Freedom of Information Law ("FOIL").  *Id*. at 256.  The prosecutor's office withheld them because of a perceived violation of Rule 4.2, as the defendant was represented by counsel in his criminal case.  *Id*. at 257.  The Court found that the defendant's standing to make the FOIL request was that of a member of the public, not as a criminal defendant, and that Rule 4.2 was inapplicable.  *Id*.

    PHDATA 3240312_1

related ERISA case was pending (Peitler Aff., ¶ 18) so that he might take that into consideration while conducting his investigation.[9]  Mr. Peitler acknowledges that he is not permitted to interview a potential witness "in connection with the subject of their representation" (Peitler Aff., ¶ 4), but he was not given adequate information by his supervisor to avoid speaking to a represented witness.  Nor does he assert in his Affidavit that he asked Mr. Croner whether he was represented by counsel.  Mr. Croner has represented that he was never asked that question. (Exh. J, Declaration of Robert E. Croner, ¶ 8)

Moreover, Mr. Peitler failed to adequately advise Mr. Croner of their adversarial interests so that Mr. Croner could make an informed decision whether to grant the interview.  (Hazard Dec., ¶ 23)  Mr. Peitler states that he informed Mr. Croner in a detailed voice message that he was an investigator for Coughlin Stoia and that they represent shareholders in a class action against Radian.  (Peitler Aff., ¶ 10)  Mr. Peitler claims to recall the details of this particular message from among the 50 phone calls that he claims to have made to former Radian and C-Bass employees during the course of his investigation (Peitler Aff., ¶ 8)  However, his recollection appears based upon his purported customary use of the "same or similar introduction" he makes to potential witnesses.  (Peitler Aff., ¶ 10)  Mr. Croner, on the other hand, recalls receiving a voicemail message from an investigator who never mentioned that he worked for plaintiffs' counsel in this case.  (Croner Dec., ¶ 4)  When the two finally spoke, Mr.

---

[9]    Mr. Peitler also either failed to discover or ignored the ERISA suit pending against Mr. Croner while conducting his investigation. Mr. Peitler states that he used the internet to identify and locate former Radian employees, using resume databases, LinkedIn, Zoom Business and Google.  (Peitler Aff., ¶ 6)  However, a simple Google search for "'Robert E. Croner' and Radian" reveals the ERISA suit pending against Mr. Croner on the first page of results, and a search for "Robert E. Croner" reveals the ERISA suit on the second page of results.  (Exhibit I)

PHDATA 3240312_1

Croner recalls only that Mr. Peitler said he was a former New York City police officer and that he had been hired by a law firm to conduct an investigation involving Radian. (Croner Dec., ¶ 6) Mr. Peitler did not state that he worked for a law firm that was suing Radian, leading Mr. Croner to erroneously assume that Mr. Peitler was working for lawyers representing Radian. (Croner Dec., ¶ 6)

It was not until Mr. Peitler commented that he could not speak with Mark Casale because he was a defendant in a securities litigation against Radian that Mr. Croner realized that Mr. Peitler likely worked for lawyers suing Radian. (Croner Dec., ¶¶ 15, 16) Mr. Croner would not have agreed to speak to Mr. Peitler had Mr. Peitler disclosed that he was working for lawyers that were suing Radian. (Croner Dec., ¶ 16) In fact, after Mr. Croner realized Mr. Peitler's association with plaintiffs' counsel, he disclosed no further information and refused to take any of Mr. Peitler's subsequent phone calls. (Croner Dec., ¶¶ 17-19)[10] Plaintiffs' own expert concedes that meritorious Rule 4.2 motions have often involved situations in which the target is left with the false impression that he is being interviewed by counsel for his former employer. (Wilkinson Aff., ¶ 12)

To make matters worse, Mr. Peitler specifically asked Mr. Croner about discussions held during weekly executive team meetings that included Radian's then-General Counsel Teresa Bryce. (Croner Dec., ¶ 11) Mr. Peitler acknowledges that he knew that Teresa Bryce was General Counsel, and the CACAC avers that General Counsel was part of the Executive Team.

---

[10]    As a practical matter, it is not relevant when Mr. Croner became aware that Mr. Peitler was acting on behalf of the plaintiffs. Rule 4.2 required his lawyer's consent to the communication, not his own.

PHDATA 3240312_1

Yet Mr. Peitler nonetheless asked questions about what was discussed in those Executive Team meetings, without giving any attorney/client warnings.  (Pls.' Br. at 4; Peitler Aff, ¶ 13) [11]

Plaintiffs' counsel cannot escape their ethical obligations by handing off investigation duties to an uninformed, unsupervised third person as though it were a simple ministerial task. Such "closed eyes to the obvious" is conduct that remains subject to Rule 4.2 and constitutes a violation of Rule 5.3.

**III.   DISMISSAL OF THIS ACTION OR, ALTERNATIVELY, DISQUALIFICATION OF PLAINTIFFS' COUNSEL AND STRIKING THE ALLEGATIONS OF THE AMENDED COMPLAINT THAT ARE PREDICATED UPON MR. CRONER'S ILL-GOTTEN STATEMENTS IS WARRANTED.**

Plaintiffs' counsel argue that none of the sanctions requested by defendants are warranted, essentially asking to be completely excused for their several ethical violations.  Their argument is based upon the faulty premise that the prejudice suffered by Radian and Mr. Croner is not sufficient to warrant the sanctions requested.  To the contrary, the potential and actual resultant harm here is precisely the type of harm Rule 4.2 was designed to prevent.  (Hazard Dec., ¶ 30)

---

[11]   Plaintiffs erroneously assert that Schnader and Mr. Croner do not enjoy an attorney-client privilege in this Securities matter because Mr. Croner is not a current employee of Radian. (Pls.' Br. at 9-10, fn. 12).  To the contrary, the privilege between Schnader and Radian extends to communications with Mr. Croner about knowledge he obtained or conduct that occurred during the course of his employment, and to communications which were themselves privileged that occurred during his employment relationship with Radian.  *US v. Merck-Medco Managed Care LLC*, 340 F.Supp.2d 554, 558 (E.D. Pa. 2004).  Moreover, Schnader represents Mr. Croner in his individual capacity with regard to claims closely related to the information Mr. Peitler solicited from Mr. Croner and this too constituted an improper attempt to obtain privileged attorney-client information.  *See generally* Part I, *supra*.

First, the harm to Mr. Croner is apparent and potentially irreparable.  Conveniently for plaintiffs in both the *Cortese* and *Johnson* cases, Mr. Croner's statements were not solicited during a deposition or other situation in which a record could have been made or notes could have been taken by a disinterested person or a person who represented Mr. Croner's interests. The statements attributed to him that were solicited during the *ex parte* communication have now been alleged against him in an Amended Complaint in the *Johnson* case.  (Hazard Dec., ¶ 27)[12] Mr. Croner denies the statements that are attributed to him, making what he said to the investigator a contested issue of fact in both cases.  (Croner Dec., ¶ 14)

Second, there are serious questions about whether plaintiffs wrongfully obtained information subject to attorney-client privilege (Hazard Dec., ¶ 44) and it goes without saying the divulgence of privileged information is a serious harm.  While plaintiffs argue that their counsel knew that they were not permitted to, and did not, solicit attorney-client information (Pls.' Br. at 4), their investigator acknowledges that the plaintiffs knew that Teresa Bryce was General Counsel and was present during the weekly Executive Team meetings that the investigator discussed with Mr. Croner.  (Peitler Aff, fn. 2)  Mr. Peitler inquired about the content of conversations held during those meetings without giving any attorney-client warnings. (Croner Dec., ¶ 11)  The CACAC also unambiguously asserts that the General Counsel was part of the Executive Team, which met regularly.  Those uncounselled, potentially privileged statements are now allegations made against Radian and Croner in both the *Cortese* and *Johnson* cases.

---

[12]  It is also troubling that, although plaintiffs argue that their counsel are not involved in the ERISA case, they fail to affirmatively address whether or not they have a common interest agreement with or have consulted with counsel of record in that matter.  (Hazard Dec., ¶ 41)

PHDATA 3240312_1

To prevent further harm, dismissal is warranted. Plaintiffs now have knowledge of uncounselled, potentially privileged statements that they should not have, and that knowledge will continue regardless of who represents them. Their first complaint was already dismissed for failure to state a claim, and their attempt to revive their claims is predicated upon allegations that they would not have been able to make without the misconduct of their attorneys. Thus, dismissal is the only appropriate remedy, and is a permissible sanction for the reasons already set forth in defendants' motion.

Alternatively, plaintiffs' counsel should be disqualified because not only are they the offending actors, but they possess knowledge that they should not have, and that they will continue to use to the detriment of defendants. Simply put, the bell cannot be un-rung. Plaintiffs' counsel argue that to warrant disqualification, the alleged misconduct must be egregious and the moving party must have suffered substantial prejudice. (Pls.' Br. at 19) Defendants have more than met that burden.[13]

Finally, whether or not counsel is disqualified, the allegations predicated upon Mr. Croner's *ex parte* statements must be stricken. Plaintiffs should not be allowed to benefit from having wrongfully solicited statements that they would not have obtained had their attorneys

---

[13] The only case cited by plaintiffs for the proposition that disqualification is not proper under these circumstances is *EEOC v. Hora*, 239 Fed. Appx. 728 (3d Cir. 2007). Yet again, their reliance is misplaced. In that case, the EEOC brought claims against defendant hotel supervisors. The district court disqualified the plaintiff-employee's lawyer for violating RPC 4.2 when he contacted an administrative assistant at the defendant hotel. The Third Circuit reversed, finding that the administrative assistant did not come within the purview of Rule 4.2 because she was a low level employee. *Id.* at 731. Thus, Rule 4.2 did not apply. *Hora* is inapplicable because Mr. Croner does come within the purview of Rule 4.2, as he was *presently* represented in the matter when plaintiffs' counsel contacted him.

PHDATA 3240312_1

adhered to their ethical obligations.[14]  While plaintiffs ask that they be allowed to use the

evidence wrongfully obtained by their own investigator (Pls.' Br. at 21), their expert concedes

that is only permitted where counsel was not complicit in causing the improper communication.

(Wilkinson Dec., ¶ 32)  Plaintiffs' counsel were absolutely complicit in causing the *ex parte*

communication with Mr. Croner, as they delegated the task of conducting interviews of Radian's

former employees to Mr. Peitler and then failed to adequately supervise him to ensure that he

complied with *their* ethical obligations.  (Hazard Dec., ¶ 47)

## IV.    CONCLUSION.

For the foregoing reasons, defendants respectfully request that the Court grant the relief

requested in their Motion for Sanctions.

<div style="margin-left: 40%;">

RADIAN GROUP, INC., SANFORD A.
IBRAHIM, C. ROBERT QUINT, and
MARK A. CASALE


By:  /s/ David Smith
          David Smith
          Theresa E. Loscalzo
          Schnader Harrison Segal & Lewis LLP
          1600 Market Street, Suite 3600
          Philadelphia, PA  19103
          215-751-2190
          Attorneys for Defendants

</div>

Dated:  October 9, 2009

---

[14]    Plaintiffs attempt to impugn defendants' position by noting that defendants did not deny the allegations they seek to strike.  (Pls.' Br. at 21)  This is ridiculous.  This motion arising from plaintiffs' counsel's egregious misconduct is not the proper place for addressing the merits (or lack thereof) of these allegations.  In any event, Mr. Croner does deny making many of the statements that are attributed to him.  (Croner Dec., ¶ 14)

PHDATA 3240312_1

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of October, 2009, a true and correct copy of

Defendants' Reply Memorandum in Support of Their Motion for Sanctions was sent to counsel

of record as indicated:

Deborah R. Gross, Esquire
Robert P. Frutkin, Esquire
Law Offices Bernard M. Gross, P.C.
Wanamaker Building, Suite 450
1100 Penn Square East
Philadelphia, PA  19107
*(Via Electronic Case Filing, Overnight Delivery, and E-mail)*

Samuel H. Rudman, Esquire
David A. Rosenfeld, Esquire
Mario Alba, Jr., Esquire
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
*(Via Electronic Case Filing, Overnight Delivery, and E-mail)*


  /s/ David Smith
David Smith