UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re RADIAN SECURITIES LITIGATION | ) | Master File No. 2:07-cv-03375-MAM |
| | ) | |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |

**SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

## INTRODUCTION

Lead Plaintiffs Iron Workers Local No. 25 Pension Fund and City of Ann Arbor Employees' Retirement System (collectively, the "Lead Plaintiffs" or the "Plaintiffs") respectfully submit this surreply in opposition to Defendants' motion for sanctions. The Court granted Plaintiffs leave to file this surreply to respond to certain erroneous assertions and arguments that Defendants raised for the first time in their reply brief filed on October 9, 2009 ("Def. Reply").

Recognizing the weakness of their claim that Rule 4.2 of the Pennsylvania Rules of Professional Conduct ("PRPC") was violated, Defendants now accuse Plaintiffs' counsel ("Counsel" or "Coughlin Stoia") of violating another ethical rule – PRPC 5.3, which concerns the supervision of non-lawyer staff. Defendants' new basis for sanctions, however, is just as lacking in merit as their PRPC 4.2 argument and further demonstrates the frivolousness of Defendants' motion.

The remainder of Defendants' reply brief is replete with false assertions and mischaracterizations. Rather than focusing on the statements made in Counsel's declarations – *i.e.*, that none of the attorneys at Coughlin Stoia knew that Robert Croner was represented by counsel in *Johnson v. Radian Group, Inc. et al.*, C.A. No. 2:08-cv-02007 (MAM) (E.D. Pa.) (the "ERISA case") – Defendants instead direct their attention to information that Counsel ***did not*** include in the declarations and use this as the foundation for their contrived arguments. Defendants wrongly presume, for example, that Counsel had actual knowledge of Mr. Croner's representation because Counsel did not specifically state whether they reviewed the complaint or any motion papers in the ERISA case or whether Counsel had entered into a common interest agreement with the plaintiffs' attorneys in the ERISA case. Defendants also falsely suggest that because Plaintiffs' liaison counsel, Deborah Gross, did not initially submit a declaration in support of Plaintiffs' opposition to Defendants' motion for sanctions, she must have known that Mr. Croner was a defendant in the ERISA case. Stripped of these erroneous presumptions, Defendants are left with nothing but the

facts – that neither Counsel nor the Investigator knew of Mr. Croner's representation in that matter. Defendants' motion should therefore be denied.

**ARGUMENT**

**I.      DEFENDANTS' NEW PRPC 5.3 ARGUMENT IS UNFOUNDED AND SHOULD BE REJECTED**

In their reply brief, Defendants, for the first time, contend that in addition to Counsel's alleged violation of PRPC 4.2, Counsel also purportedly violated PRPC 5.3 in "fail[ing] to supervise [the Investigator] to ensure that his conduct was compatible with their professional obligations not to speak to a represented witness and not to violate attorney-client privilege." Def. Reply at 12. Defendants' newly fabricated argument is unsupported by any citation to pertinent authority and further demonstrates that Defendants are grasping at straws in a futile attempt to taint Counsel with a violation of some – **any** – rule under the PRPC.

Specifically, Defendants accuse Counsel of violating PRPC 5.3(b), which provides that "a lawyer having direct supervisory authority over the non-lawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." *Id.* However, since no violation of PRPC 4.2 has been demonstrated, Defendants have no basis upon which to assert a PRPC 5.3 violation. *See* Supplemental Declaration of Thomas G. Wilkinson, Jr. ("Wilkinson Decl. II") at ¶8, attached hereto as Exhibit I. As explained throughout Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Sanctions ("Opp. Brief"), Counsel did not know that Mr. Croner was represented by an attorney in the ERISA case and, even if Counsel had known of Mr. Croner's representation in that matter, the Investigator's interview was entirely proper. Indeed, it is completely illogical to suggest, as Defendants do here, that Counsel knew Mr. Croner was represented by an attorney, knew that any contact with Mr. Croner was improper and yet, decided to include information provided by Mr. Croner in Plaintiffs' Consolidated Amended Class Action Complaint (the "Amended Complaint"). Accordingly, since it is Counsel's position

that the Investigator's conduct was at all times compatible with the professional obligations of the Coughlin Stoia law firm, no violation of PRPC 5.3 could have occurred.

The Investigator's affidavit, which was filed along with the Opp. Brief, confirms that he performed his duties professionally and entirely in accordance with Counsel's supervisory obligations. *See* Wilkinson Decl. II at ¶10. After first determining that Mr. Croner was a former Radian employee, the Investigator called Mr. Croner and left a detailed message in which he explained that he was an investigator for the law firm of Coughlin Stoia and that his firm represented shareholders in a class action suit against Radian. *See* Peitler Aff. at ¶10.[1] Then, on April 17, 2009, when the Investigator spoke directly with Mr. Croner, he ***again*** notified Mr. Croner that he was an investigator for Coughlin Stoia, who represented shareholders in a class action suit against Radian. *Id.* at ¶11. Accordingly, there was no deception or trickery by the Investigator or any other misconduct at the behest of Counsel, and Mr. Croner knew exactly who he was speaking with and the purpose of the call.

Not surprisingly, after Mr. Croner's attorneys presumably admonished him for speaking with the Investigator, Mr. Croner, for the first time (in the declaration drafted by his counsel), contends that he may have been confused about the Investigator's identity and thought that Coughlin Stoia represented Radian.[2] *See* Croner Decl. at ¶6. Contrary to Defendants' assertions, Mr. Croner does

---

[1]    "Peitler Aff. at __" refers to paragraphs of the Affidavit of Steven J. Peitler attached as Exhibit B to Plaintiffs' Opp. Brief.

[2]    Mr. Croner also, for the first time, recants several statements attributed to him as CW 6 in the Amended Complaint, which was filed three months prior to Mr. Croner's declaration. *See* Declaration of Robert E. Croner ("Croner Decl.") at ¶14, attached as Exhibit J to Def. Reply. While Mr. Croner denies making some of the statements set out in paragraphs 130-131 and 146 of the Amended Complaint, he does not disclose any "actual" statement that he recalls making during the thirty minute interview with the Investigator and Defendants do not correct any inaccuracies in their briefing on the motion to dismiss. Defendants suggest that the purportedly inaccurate allegations based on the interview have caused some unspecified "harm" to Radian or to Mr. Croner. *See* Def. Reply at 16; Declaration of Geoffrey C. Hazard Jr. ("Hazard Decl.") at ¶43. However, any alleged

not affirmatively deny that he was informed of the Investigator's affiliation with Coughlin Stoia. *See* Def. Reply at 13; Croner Decl. at ¶¶4, 6. Rather, Mr. Croner asserts that the Investigator's affiliation with Plaintiffs' Counsel may not have been given "sufficient emphasis." Croner Decl. at ¶¶4, 6. Mr. Croner – who does not remember the Investigator's name, the time frame of the conversation, or the name of the Investigator's law firm – has an admittedly limited recollection of the conversation, and he took no notes during the interview. *Id.* Moreover, Mr. Croner does not explain how he could have possibly misunderstood that Coughlin Stoia was acting as counsel for Radian when he knew that Schnader Harrison represented Radian in the ERISA case. Wilkinson Decl. II at ¶8. In any event, Mr. Croner admits that at some point during the interview, when the Investigator told Mr. Croner that he was prohibited from speaking with Defendant Casale, Mr. Croner clearly understood that he was being interviewed by an investigator for Plaintiffs' Counsel in relation to a securities class action brought against Radian.[3] Croner Decl. at ¶¶15-16. However, Mr. Croner never informed his counsel at Schnader Harrison about the communication with the Investigator and neither Mr. Croner, nor his counsel, advised the Investigator that Mr. Croner was represented by counsel and should not be contacted. *See Id.* at ¶19. Accordingly, it appears that Mr. Croner chose to conceal the communication from his counsel because he was not mislead or did not consider the interview significant because the information he provided to the Investigator was not

---

discrepancies or revelation of prejudicial facts does not undermine the right of a lawyer or the lawyer's agent to conduct an interview with a fact witness. *See* Wilkinson Decl. II at ¶12; *see also Wright v. Group Health Hosp.*, 691 P.2d 564, 569 (Wash. 1984) ("It is not the purpose of the rule to protect a corporate party from the revelation of prejudicial facts."). In any event, if Defendants genuinely dispute any allegation attributed to CW 6, they may deny and correct the relevant facts in their answer. *See* Wilkinson Decl. II at ¶12.

[3]    Even after Mr. Croner was fully aware of the Investigator's identity, he willingly continued to speak with the Investigator and even provided an email address so that the Investigator could contact him again. *See* Peitler Aff. at ¶¶14-15.

sensitive or confidential. Wilkinson Decl. II at ¶9. Regardless of Mr. Croner's motivation, blame

should not be directed to Counsel for the use of the information provided by Mr. Croner. *Id.*

While acknowledging that the Investigator knew that he was prohibited from interviewing

represented witnesses in connection with the subject of their representation, Defendants nevertheless

characterize the Investigator as "uninformed" and "unsupervised" and assert that the Investigator

"was not given adequate information by his supervisor to avoid speaking to a represented witness."

Def. Reply at 13, 15. Defendants, however, fail to cite any authority suggesting that PRPC 5.3

requires Counsel to closely strategize in advance of each interview the Investigator will undertake.

Defendants also ignore the Investigator's 25 years of professional experience conducting witness

interviews, nine of which were devoted almost exclusively to securities class actions. Indeed, part of

the Investigator's job description was to "***identify***, locate and interview former employees." Peitler

Aff. at ¶3. Defendants also fault the Investigator for not knowing specific information about the

ERISA case, including the identities of the parties involved, and for not inquiring whether Mr.

Croner was represented by counsel. *See* Def. Reply at 7, 12-13. However, neither the disciplinary

rules, nor the authorities interpreting such rules, require the Investigator to be fully familiar with the

pleadings in the separate ERISA case or to ask a witness various probing questions before

commencing an interview.[4] Wilkinson Decl. II at ¶10.

_____

[4]    Defendants' argument that the Investigator should have somehow discovered that Mr. Croner was a defendant in the ERISA case by performing a Google search for "Robert E. Croner and Radian" (Def. Reply at 13 n.9) fails for numerous reasons. First, the Investigator never stated that he performed a Google search for Mr. Croner, but rather, that he discovered Mr. Croner's resume online and that Mr. Croner was described as a former Radian employee on his LinkedIn and Zoom Business pages. *See* Peitler Aff. at 10. Moreover, even if the Investigator had performed a Google search of Mr. Croner, Defendants assume that the very specific search of "Robert E. Croner and Radian" or "Robert E. Croner" would have been used. However, a simple search for "Robert Croner" provides Mr. Croner's LinkedIn and Zoom Business pages, without producing any results related to Mr. Croner's involvement in the ERISA case.

II.    **DEFENDANTS RAISE SEVERAL ADDITIONAL NEW ARGUMENTS AND FACTUAL MISCHARACTERIZATIONS THAT SHOULD BE DISREGARDED**

    A.    **Defendants' Argument of What Counsel Must Have Known or Should Have Known Is Insufficient to Establish a PRPC 4.2 Violation**

In response to Counsel's assertion that the attorneys at Coughlin Stoia did not know that Mr. Croner was a defendant in the ERISA case (*see* Opp. Brief at 13-15), Defendants now make the unsupported argument that, to comply with the Court's order scheduling a single hearing on the motions to dismiss the complaints in the securities and ERISA cases, Counsel "must have, at minimum, reviewed the dockets, the complaints and the briefing" for the ERISA case, which would have revealed that Mr. Croner was a defendant in that case. Def. Reply at 5-6; Hazard Decl. at ¶15. Defendants' surmise is simply false and patently flawed in several respects. First, it is unreasonable to suggest that Counsel should have reviewed the docket, complaints and briefing in response to a simple order by the Court scheduling a single hearing for the pending motions in two cases. The more logical response would be to consent to a single hearing if it were efficient and appropriate for the Court, which is exactly what Plaintiffs did. *See* Declaration of Deborah R. Gross ("Gross Decl.") at ¶5, attached hereto as Exhibit II. Indeed, because the ERISA case was an entirely separate matter with different claims, Counsel did not deem it necessary to review the docket or any documents in that case to prepare to argue the motion they had briefed in *this* case.[5] Second, what Defendants think their opposing counsel "should have" reviewed does not make out a violation of PRPC 4.2. Wilkinson Decl. II at ¶5. The comments to PRPC 4.2 leave no question that actual knowledge of the

---

[5]    Defendants' argument that Counsel must have read the "ERISA portion" of the transcript for the oral argument held on December 17, 2008 (Def. Reply at 6) fails for the same reasons – *i.e.*, it was unnecessary to review the ERISA portion of the transcript because it was entirely irrelevant to the securities action.

representation concerning the matter is required to preclude a communication with the represented person. *Id.*; *see also* PRPC 4.2, Comment [8].

Defendants also argue that Counsel must have known that Mr. Croner was a defendant in the ERISA case because an internet search of "Robert Croner and Radian" produces a link to the ERISA case. Def. Reply at 3. However, as discussed above,[6] it is unreasonable to infer Counsel's knowledge on the assumption that the specific Google search of "Robert Croner *and* Radian" was performed or, according to Defendants, should have been performed.

Moreover, Defendants seize on the fact that Counsel did not mention whether they "had obtained or reviewed the pleadings and motion papers in the *Johnson* case or had entered into a common interest agreement or otherwise cooperated and shared information with counsel for the *Johnson* plaintiff"[7] and improperly assume that because this information was not stated in Counsel's declarations, there must have been some sort of collaboration with the attorneys in the ERISA case. Def. Reply at 3. This could not be further from the truth. Contrary to Defendants' baseless assumptions, Counsel *did not* obtain or review any pleadings or motion papers in the ERISA case prior to the Investigator's interview with Mr. Croner, *did not* enter into a common interest agreement with counsel for the plaintiff in the ERISA case and *did not* share any information with any attorneys involved in the ERISA case. *See* Gross Decl. at ¶¶6-7, 10. Therefore, Defendants' repeated and unfounded assertions that Counsel reviewed information regarding the ERISA case and had information about Mr. Croner's representation must be disregarded and all of Defendants' conclusions based upon these erroneous assumptions must likewise be excluded from consideration.

---

[6]     *See* footnote 4.

[7]     Indeed, Defendants state this three times throughout their reply brief. *See* Def. Reply at 1, 3, 16 n.12.

**B.      Defendants Make False Allegations Regarding Plaintiffs' Liaison Counsel**

In an attempt to support their flawed argument that Counsel knew that Mr. Croner was represented by Schnader Harrison for purposes of *this* matter, Defendants also falsely contend that Plaintiffs' liaison counsel, Deborah Gross, was present for the entire hearing on the motions to dismiss the securities action and the ERISA case, held on December 19, 2008 and was on notice that Mr. Croner was represented by counsel in the ERISA case. Def. Reply at 6 n.5, 7; Hazard Decl. at ¶¶17-18. Once again, however, Defendants' arguments are predicated upon erroneous factual assumptions. Despite Defendants' assertions to the contrary, Ms. Gross was ***not*** present for the ERISA portion of the oral argument held on December 19, 2008. Gross Decl. at ¶3. In fact, Ms. Gross left the courtroom with Samuel Rudman of Coughlin Stoia, who received the Court's permission to leave after the oral argument on the securities action was completed. *Id.* at ¶¶3-4. While Defendants have now conceded that Ms. Gross was not present for the ERISA portion of the hearing, they have failed to withdraw or correct the false allegations contained in their reply brief.[8] *See* Defendants' letter dated October 15, 2009 ("Def. ltr.") at 2. Instead of complying with Rule 11 protocol, Defendants chose to file a letter brief with the Court, in which they conceded a lack of support for this claim that Ms. Gross was present for the ERISA portion of the hearing, but also argued what they contend Counsel *should have* reviewed and "*could have*" known. *Id.* at 2-3.

**C.      Defendants Misleadingly Imply that Their Professional Obligations to Mr. Croner Extend to the Securities Case**

Defendants' reply also creatively expands the scope of the representation of Mr. Croner so as to justify the claim that the Investigator improperly intruded upon their relationship by asking

---

[8]      On October 13, 2009, Ms. Gross sent David Smith of the Schnader Harrison law firm a letter notifying him that Defendants' reply brief contained "factual contentions which do not have evidentiary support" and advised Mr. Smith that he had 21 days to withdraw or correct the reply brief.

questions directed to the securities class action. Specifically, Defendants argue that Schnader Harrison's "professional obligations to Mr. Croner" extend beyond the ERISA case and require Mr. Croner's counsel to "protect his interests in both cases." Def. Reply at 8. Defendants' new argument, however, is fundamentally flawed because Mr. Croner has no interest in the securities action, as he is not a party to the litigation. Moreover, Schnader Harrison has failed to disclose any retainer agreement with Mr. Croner that would presumably reveal, as Defendants now imply, that Schnader Harrison was retained to represent Mr. Croner's interests in **both** the ERISA case and the securities case. *See* Wilkinson Decl. II at ¶11.

### D.    No Privileged Information Was Solicited or Disclosed During the Interview

Defendants further assert that "potentially privileged" information *may* have been disclosed during Mr. Croner's interview. While Defendants do not specifically allege that Mr. Croner revealed any privileged information, they nevertheless insinuate that there are "serious questions" whether the Investigator obtained privileged information. Def. Reply at 16. To the contrary, a "perceived" risk of disclosure of privileged information is not "sufficient to support sanctions for *ex parte* contact with former employees under Rule 4.2." *Dillon Cos. v. The Sico Co.*, No. 92-1512, 1993 U.S. Dist. LEXIS 17450, at *17 (E.D. Pa. Nov. 26, 1993). Defendants do not identify any privileged statements, nor does Mr. Croner's declaration state or imply that he divulged any privileged information. Rather, Mr. Croner states that he "mentioned general topics that might be discussed at a typical team meeting" and "answered in very general terms" but "did not discuss with the Investigator the substance of any discussions regarding C-BASS at meetings of Radian's executive team." Croner Decl. at ¶¶11-12. Accordingly, Mr. Croner's declaration contradicts any assertion that privileged and confidential legal advice emanated from executive team meetings. *See* Wilkinson Decl. II at ¶14.

Defendants also note that "plaintiffs knew that Teresa Bryce was General Counsel (of Radian) and was present during the weekly Executive Team meetings" (Def. Reply at 16); however, this was by no means secret information and not, as Defendants imply, privileged or confidential. In any event, the mere presence of General Counsel does not insulate the meetings, or the topics discussed during those meetings, from disclosure. See Wilkinson Decl. II at ¶15. The attorney-client privilege also does not shield facts, regardless of how damaging to Defendants, from discovery. Id.; see, e.g., American Health Sys., Inc. v. Crozier-Keystone Health Sys., No. 93-0543, 1994 U.S. Dist. LEXIS 13115, at *11 (E.D. Pa. Sept. 12, 1994) ("all facts are discoverable; any legal conclusions regarding those facts are not"); Philadelphia v. Westinghouse Electric Corp., 205 F. Supp. 830, 831 (E.D. Pa. 1962) ("the protection of the [attorney-client] privilege extends only to communications and not to facts").

Defendants also argue that the Investigator should have given Mr. Croner attorney-client "warnings." Def. Reply at 14-16; Hazard Decl. at ¶44. Defendants do not and cannot cite to any authority requiring such warnings prior to an interview of a witness. Ethics opinions interpreting PRPC 4.2 merely advise that lawyers and their agents should not seek to elicit privileged information. *See* Wilkinson Decl. II at ¶13; *see also* PBA Legal Ethics FO 90-142 and 1995 Update. Here, there is no assertion by either Mr. Croner or Defendants that the Investigator directly asked for the disclosure of any privileged communications or that he in fact disclosed any such information.

After filing two memoranda and a letter brief, Defendants have yet to identify any true prejudice or material harm resulting from the challenged interview. Thus, even if there had been a PRPC violation, which there was not, there would be no basis to impose any of Defendants' requested sanctions.

## CONCLUSION

For these reasons, and for the reasons previously stated in the Opp. Brief, Plaintiffs respectfully request that the Court deny Defendants' motion for sanctions in its entirety.

DATED:  November 6, 2009

LAW OFFICES BERNARD M. GROSS, P.C.
DEBORAH R. GROSS
ROBERT P. FRUTKIN

_/s/ Deborah R. Gross - DG639_
DEBORAH R. GROSS

Wanamaker Building, Suite 450
100 Penn Square East
Philadelphia, PA 19107
Telephone:  215/561-3600
215/561-3000 (fax)

_Liaison Counsel_

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

_Lead Counsel for Plaintiffs_

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

VANOVERBEKE MICHAUD
    & TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

_Additional Counsel for Plaintiff_

# EXHIBIT "I"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re RADIAN SECURITIES LITIGATION | ) | Master File No. 2:07-cv-03375-MAM |
| | ) | |
| ——————————————————— | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |
| ——————————————————— | ) | |

**SUPPLEMENTAL DECLARATION OF THOMAS G. WILKINSON, JR**

Thomas G. Wilkinson, Jr., hereby declares and states as follows:

1.      I have reviewed Defendants' Reply Memorandum in Support of Their Motion for Sanctions and supporting exhibits, as well as their letter brief dated October 15, 2009, and Plaintiffs' Surreply in Opposition to Defendants' Motion for Sanctions.    This declaration addresses the several material points raised for the first time in the Reply Memorandum and in the accompanying Declaration of Geoffrey C. Hazard, Jr. attached as Exhibit A thereto.

2.      Defendants' Reply Memorandum attempts to buttress the contention that the attorneys at the Coughlin Stoia Geller Rudman & Robbins ("Coughlin Stoia") law firm in New York "knew" that Robert Croner was represented by Schnader Harrison in connection with *this* matter by arguing that Plaintiffs' liaison counsel, Deborah Gross, of the Law Offices of Bernard M. Gross, P.C. in Philadelphia, attended the entire hearing on the motions to dismiss in the *Cortese* and *Johnson* (ERISA) actions held on December 19, 2008.    *E.g.*, Hazard Decl. ¶18 ("During the ERISA part of the argument, at which Ms. Gross was present, Judge McLaughlin referred to Mr. Croner as a defendant and asked a specific question about Croner's position."). From this, Defendants argue and Professor Hazard opines (Hazard Decl. ¶¶8-21, 40, 41) that Ms. Gross knew that Mr. Croner was represented by counsel in the ERISA action.    They further contend that such knowledge on the part of Ms. Gross was likely imparted to all Plaintiffs' counsel, or that they should somehow be deemed to possess such knowledge no matter whether Ms. Gross had in fact conveyed any information concerning Mr. Croner's representation to anyone.    No case authority or ethics opinions are offered for the proposition that such knowledge should be deemed imputed from local counsel to lead counsel in another state.

3.      However, as Deborah Gross confirms in her declaration dated October 26, 2009, she did not attend the ERISA portion of the oral argument held on December 19, 2008, but rather left the courtroom with Samuel Rudman, who had previously requested and received the Court's

permission to attend only the argument bearing on the *Cortese* case. (Gross Decl. ¶¶3-4). Therefore, the Defendants' contention and Professor Hazard's opinion were predicated upon an erroneous factual assumption.

4.      After conceding that Defendants only had inferred that Ms. Gross was present for that portion of the motions hearing dealing with the ERISA case, counsel for Defendants in their October 15 letter brief question why Ms. Gross had not also submitted a declaration confirming whether she knew Mr. Croner was a defendant in that case.   The October 26 declaration submitted by Ms. Gross together with Plaintiffs' Surreply addresses that perceived gap in the record by confirming that Ms. Gross also (a) had no knowledge of Mr. Croner's status as a represented defendant in the ERISA case, and (b) had no communication either with the Investigator for Coughlin Stoia or with counsel in the ERISA case concerning the litigation. (Gross Decl. ¶¶7-9).

5.      While it now appears uncontroverted that Plaintiffs' counsel did not attend the ERISA portion of the hearing that made passing reference to Mr. Croner, Defendants' Reply Memorandum asserts that Plaintiffs' knowledge of Mr. Croner's representation "may be inferred from the circumstances."   (Def. Reply at 4) (citing the PRPC 1.0(f) definition of "knows" for purposes of the Rules).   The somewhat circular language employed in PRPC 1.0(f) has been recognized by commentators as a "legal oxymoron" that lends further ambiguity to application of PRPC 4.2 when a claimed violation occurs.[1]   In any event, there should be no misunderstanding that actual knowledge of representation concerning the matter is required to preclude a communication with the represented person under the no contact rule.   A violation is not made

---

[1]      S. Becker, Discovery of Information and Documents from a Litigant's Former Employees: Synergy and Synthesis of Civil Rules, Ethical Standards, Privilege Doctrines, and Common Law Principles, 81 *Neb. L. Rev.* 868, 897 (2003).

out based on what counsel "should have known",[2] "had reason to know" or other constructive knowledge standard, as is suggested in the Defendants' Reply Memorandum and in their October 15, 2009 letter brief.[3]  In other words, indirect or imputed knowledge will not suffice.

6.      Professor Hazard also opined that the existence of a common interest agreement between counsel in the *Cortese* and *Johnson* cases might serve to imply the requisite actual knowledge of Mr. Croner's representation.  (Hazard Decl. ¶41(a)).  However, Ms. Gross also has confirmed in her declaration that no such common interest agreement exists.  (Gross Decl. ¶7).

7.      The Reply Memorandum (pp. 12-15) and the Hazard Declaration (¶¶46-49) also assert for the first time that the Coughlin Stoia lawyers inadequately supervised their Investigator, Steven J. Peitler, in connection with his challenged interview of Mr. Croner in April 2009, and thereby violated PRPC 5.3 (Responsibilities Regarding Nonlawyer Assistants). Again, no case law or ethics authorities are cited in support of this proposition.

8.      In the absence of a PRPC 4.2 violation via an agent here, there is no basis for Defendants to assert an ancillary PRPC 5.3 violation.  The Defendants' filing sidesteps the Investigator's over 25 years of professional experience conducting witness interviews, including almost nine years specifically in the class action securities context.  Most practicing lawyers and paralegals lack such extensive interviewing experience.  The Investigator and Mr. Croner differ somewhat on how the Investigator introduced himself at the outset of the telephone interview. Mr. Croner's recollection of the conversation is admittedly limited and he apparently took no

---

[2]      The Terminology section of the Model Rules includes a definition of "reasonably should know" at PRPC 1.0(j), which was deliberately not incorporated into PRPC 4.2 or its comments.

[3]      *E.g.*, *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp.*, 961 F. Supp. 1580, 1583 (M.D. Fla. 1997) ("Rule requires 'actual knowledge of the fact in question' and 'does not . . . imply a duty to inquire.'"); *Snider v. Superior Court*, 7 Cal. Rptr.3d 119, 139-40 (Cal. Ct. App. 2003); *Truitt v. Superior Court*, 69 Cal. Rptr.2d 558 (Cal. Ct. App. 1997).

notes. Mr. Croner does not explain how he could have misunderstood that the Coughlin Stoia firm was acting as counsel for Radian when he knew that his personal counsel at Schnader Harrison served as counsel for Radian in the *Johnson* action. In fact, Mr. Croner does not deny that he was informed that the Investigator was acting for Plaintiffs' counsel (Coughlin Stoia) in this action; instead, he asserts that this affiliation may not have been given "sufficient emphasis." (Croner Decl. ¶4).

9.     The Croner Declaration does, however, confirm that he clearly understood at some point during the telephone call that he was being interviewed by an investigator for Plaintiffs' counsel, yet he did not inform the Investigator that he was operating under any misunderstanding as to the Investigator's role. (Croner Decl. ¶¶16-17). He did not, for example, immediately cause his counsel to contact Coughlin Stoia to demand that no further communication occur or that the interview results not be employed in further pursuit of the securities class action. Neither Mr. Croner nor his counsel responded to the Investigator's follow up email or telephone messages with the advice that Mr. Croner was represented by counsel and should not, therefore, be contacted. (Croner Decl. ¶19). Rather, it appears that Mr. Croner either (a) was not in any way misled; (b) did not consider the interview significant because the information he conveyed to the Investigator was in no way sensitive or confidential; and/or (c) chose to conceal the fact of the interview from his counsel for whatever reason. Whatever Mr. Croner's motivation may have been for remaining silent about the interview some six months ago, there is no basis to sanction Plaintiffs' counsel for their use of the interview results in supplementing their pleading.

10.     The newly asserted PRPC 5.3 violation is refuted by examining what the Investigator did not do (and was not directed to do by Plaintiffs' counsel). He did not (and was not directed to) misrepresent who he was or by whom he was employed. He did not take Mr.

Croner up on the suggestion that he contact Mark Casale, who is a named defendant in this action, and quite correctly so informed Mr. Croner that he was not in a position to do so. He did not use any ruse to get Mr. Croner to keep talking. He did not make any express or implied threat of any kind to cause Mr. Croner to call him back or consent to the interview. He did not offer Mr. Croner money to provide pertinent information. Mr. Croner's own declaration confirms that the Investigator did not harass or invade his privacy, did not appear at his home unannounced or engage in other misconduct at the behest of Plaintiffs' counsel. While Defendants might like to impose on the Investigator the additional obligations to be fully familiar with the pleadings in the ERISA action and to ask each former employee witness various probing questions before actually commencing the interview, the disciplinary rules do not require it. The case law also confirms that PRPC 4.2 does not require that unrepresented persons be advised that they have a right to refuse to be interviewed or to have the former employer's lawyer present for the interview, as such a requirement would tend to convert the interview process into a deposition with the consequent chilling effect upon the discovery process. *E.g., Pritts v. Wendy's of Greater Pittsburgh, Inc.*, 37 Pa.D&C.4th 158, 167 (C.P. Allegheny 1998) (Wettick, J.).

11.     The Reply Memorandum asserts for the first time that defense counsel owe "professional obligations to Mr. Croner" that extend to protecting his interests in both the ERISA case <u>and</u> the securities class action, and imply that Plaintiffs' counsel should have known that prior to contacting Mr. Croner. (Def. Reply at 8). Professor Hazard's declaration does not speak to the scope of counsel for Defendants' professional obligations. Inasmuch as defense counsel have not disclosed any engagement letter issued to Mr. Croner, which letter should confirm the scope (and material limitations) of the representation, it is not possible to confirm whether there was any undertaking to act on his behalf in connection with this lawsuit as well. Mr. Croner

- 5 -

clearly had little or no knowledge of the securities class action at the time of his interview in April 2009, and his declaration indicates that he still has very limited knowledge about this case. (*See* Croner Decl. ¶¶13-14). This suggests that his counsel was retained to represent him for purposes of defending the ERISA/*Johnson* action only. If Mr. Croner's counsel had undertaken professional obligations to Mr. Croner in connection with this case and viewed this case as integrally related to *Johnson,* they presumably would have fully apprised him about this case and cautioned him against granting interviews concerning this case (or to the Coughlin Stoia law firm) and thereby obviated the present situation. *See* PRPC 3.4(d).

12.    The Reply Memorandum and Hazard Declaration also raise for the first time the assertion that Coughlin Stoia's Investigator either misunderstood Mr. Croner or his statements to the Investigator were related inaccurately in paragraphs 130-131 and 146 of the Amended Complaint. (Croner Decl. ¶14). However, no such inaccuracy is corrected either in the Reply Memorandum or in the Croner Declaration. It is then suggested that the claimed inaccurate allegations based on his interview have caused some unspecified "harm" to Radian or to Croner. (Def. Reply at 16; Hazard Decl. ¶43). This would not be the first or last time a witness has claimed after the fact that a lawyer, investigator or paralegal has misunderstood, misquoted or otherwise failed to faithfully capture and relate or plead statements made by the witness. Any such discrepancy does not undermine the right of the lawyer or the lawyer's agent to conduct the interview. It must be borne in mind in analyzing this issue that "[i]t is not the purpose of the rule to protect a corporate party from the revelation of prejudicial facts." *Wright v. Group Health Hospital,* 691 P.2d 564, 569 (Wash. 1984). Defendants' Reply Memorandum concedes that former employees are generally "fair game" in witness interviews. It is inevitable that such witnesses will from time to time have different recollections of what facts were related in an

- 6 -

interview.  If Defendants indeed possess contrary facts, they are free to deny or controvert the relevant facts attributed to "CW6"/Croner in their answer.

13.    Defendants also contend that Plaintiffs' Investigator *may* have elicited information protected by the attorney-client privilege, and should have warned Mr. Croner against divulging privileged information.  (Def. Reply at 16).  Yet again, no authority is offered for the suggestion that such a warning is required prior to an interview of a former employee.  Ethics opinions construing PRPC 4.2  simply state that lawyers and their agents should not seek to elicit privileged information. *See, e.g.*, PBA Legal Ethics FO 90-142 and 1995 Update.

14.    There is nothing in this record remotely suggesting that the Investigator requested Mr. Croner to divulge privileged information or that Mr. Croner did so.  While the Defendants assert that the several allegations in the Amended Complaint referring to CW6/Croner are "potentially privileged" (Def. Reply at 17), Mr. Croner's Declaration does not either state or imply that he divulged any privileged information.  To the contrary, the Croner Declaration directly contradicts any assertion that privileged and confidential legal advice emanating from executive team meetings was disclosed to the Investigator, because Mr. Croner limited his statements to "general topics that might be discussed at a typical team meeting" and he "did not discuss with the Investigator the substance of any discussions regarding C-BASS at meetings of Radian's executive team."  (Croner Decl. ¶¶11-12).  The Amended Complaint's allegations relating information secured from CW6/Croner also do not disclose any factual information, let alone privileged legal advice, attributed to Radian's general counsel.  Accordingly, Defendants' reference to the specter of some inadvertent invasion of the privilege cannot be accorded any weight.

15.    The Hazard Declaration takes issue with the fact that the Investigator asked Mr. Croner whether and how frequently the Radian investment in C-BASS was discussed in

meetings of executive management, some of which meetings Radian's general counsel may have attended, and further suggests that a "Miranda warning" would have been appropriate in view of the potential danger of disclosure of privileged information. (Hazard Decl. ¶44). It is fundamental that the mere presence of in-house counsel in a meeting of executive management does not provide some umbrella of privilege over the topics of discussion. It is also basic that the privilege does not shield facts, no matter how damaging, from discovery.[4] In any event, no communication constituting confidential legal advice or request for legal advice is disclosed in the Amended Complaint, nor did Mr. Croner in his declaration state that he disclosed any privileged or confidential information to the Investigator.

16.    Professor Hazard does not opine in his declaration that any court imposed sanction should be entered here for the claimed disciplinary rule violations. However, Defendants' Reply Memorandum continues to urge that Plaintiffs' counsel be disqualified, without citation to any authority on point. Such a severe sanction would run contrary to Third Circuit, Eastern District and Pennsylvania state court precedent concerning claimed PRPC 4.2 violations. As the Pennsylvania Superior Court concluded in *Vertical Resources, Inc. v. Bramlett*, 837 A.2d 1193, 1202 (Pa. Super. 2003), absent reliable evidence that the claimed PRPC 4.2 violation would deny the aggrieved party the right to a fair trial, there is no basis to disqualify counsel.

The opinions expressed above are stated within a reasonable degree of certainty.

I declare under penalty of perjury under the laws of the Commonwealth of Pennsylvania that the foregoing is true and correct.

---

[4]    *E.g., Upjohn v. United States*, 449 U.S. 383, 395-96 (1981); *Swidler & Berlin v. United States*, 524 U.S. 399, 412 (1998); *Constand v. Cosby*, 232 F.R.D. 494, 500 (E.D. Pa. 2006); *Stabilus v. Haynsworth*, 144 F.R.D. 258, 268 (E.D. Pa. 1992); *Hanntz v. Shiley, Inc.*, 766 F. Supp. 258, 265 (D.N.J. 1991).

Executed on this 5th day of November, 2009, at Philadelphia, Pennsylvania.

_Thomas G. Wilkinson_
THOMAS G. WILKINSON, JR.

# EXHIBIT "II"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

In re RADIAN SECURITIES LITIGATION  )   Master File No. 2:07-cv-03375-MAM
                                         )
This Document Relates To:            )   <u>CLASS ACTION</u>
                                         )
   ALL ACTIONS.                 )
                                         )

## DECLARATION OF DEBORAH R. GROSS, ESQUIRE

COMMONWEALTH OF PENNSYLVANIA    :
                                      :     ss
COUNTY OF PHILADELPHIA          :

I, Deborah R. Gross, being duly sworn, according to law, declare that the following statements are true and correct to the best of my knowledge, information and belief:

1.    I am an attorney at Law Offices Bernard M. Gross., P.C., Liaison Counsel in the above captioned action.

2.    I attended the December 19, 2008 hearing on defendants' motion to dismiss the securities class action lawsuit.

3.    I left the hearing with my co-counsel Samuel Rudman, Esquire and did not stay for the hearing on defendants' motion to dismiss the ERISA lawsuit. At the end of the hearing on the securities case, Judge McLaughlin said: "Anybody who is not going to be actually arguing the ERISA case is certainly free to leave and I will - - you know, infer nothing from that except that you need to do other things, . . . ." Transcript at p. 70.

4.    I was preparing for a bench trial before Judge Levin in the Court of Common Pleas for Philadelphia County and returned to my office in order to run a conference call among Plaintiffs' Counsel. The conference call lasted from 11 a.m. until past noon. Proof of the

conference call is attached herewith as Exhibit A. The hearing on the ERISA motion to dismiss was concluded at 12:07 p.m.

5.     I disagree with many statements in defendants' reply as to what I must have read in order to determine whether to agree with the Court's decision to schedule a single hearing on the motion to dismiss. Reply at 5. There was no need to "review the dockets, the complaints and the briefing on the motions to dismiss to comply with the Court's direction." It seemed logical that if it were efficient and appropriate for the Court, then Plaintiffs would agree. The motions presented were those made by defendants.

6.     I do not receive ECF notices in the ERISA matter as I am not an attorney of record in the ERISA matter. In order to access any dockets or pleadings in the ERISA matter, I would have had to log onto PACER. My firm has no bills from Pacer from the time of the November 14, 2008 Order of the Court through the date of the hearing, December 19, 2008.

7.     Counsel in the securities case has no common interest agreement with the counsel in the ERISA case, nor have I ever consulted with counsel in the ERISA case concerning the litigation.

8.     I have never had any conversations with Steven J. Peitler concerning this litigation.

9.     I was not aware that Mr. Croner was a defendant in the ERISA action.

10.    Prior to receipt of defendants' motion for sanctions, I had never reviewed the ERISA docket or read any pleadings filed in the ERISA action.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 16, 2009.

**DEBORAH R. GROSS**

# EXHIBIT "A"

Bernard M Gross, P.C.
100 Penn Square
East Suite 450
Philadelphia, PA 19102

ATTN: Harriet Gross

Visit us at:
www.conferencegroup.com



Account Number: 5898-0000    Conference ID: 413564    Cross Reference #: Q1183S357479    Conference Name: D. Gross    Account Name: Bernard M Gross, P.C.

| Conference Date: | | | | Leader Defined Billing Codes: | | Conference Start Date/Time: | | Conference End Date/Time: | |
|---|---|---|---|---|---|---|---|---|---|

Conference Cost: $18.900

| 12/19/2008 | | | | | | 12/19/2008 10:57:51 AM | | 12/19/2008 12:02:22 PM | |
|---|---|---|---|---|---|---|---|---|---|
| Line Name | Caller ID | Dial Out # | Call Start Date/Time | Call End Date/Time | Service | Units | Rate | Call Cost |
| | 6108220200 | | 12/19/2008 10:57:51 AM | 12/19/2008 12:02:07 PM | RF | 64 | $0.060 | $3.840 |
| | 2155469672 | | 12/19/2008 10:59:01 AM | 12/19/2008 10:59:46 AM | RF | 1 | $0.060 | $0.060 |
| | 2155469671 | | 12/19/2008 11:00:10 AM | 12/19/2008 12:02:07 PM | RF | 62 | $0.060 | $3.720 |
| | 6195774008 | | 12/19/2008 11:00:24 AM | 12/19/2008 11:54:27 AM | RF | 54 | $0.060 | $3.240 |
| | 6105633598 | | 12/19/2008 11:00:47 AM | 12/19/2008 11:13:32 AM | RF | 13 | $0.060 | $0.780 |
| | 2158055175 | | 12/19/2008 11:01:26 AM | 12/19/2008 11:14:20 AM | RF | 13 | $0.060 | $0.780 |
| | 6192311058 | | 12/19/2008 11:04:30 AM | 12/19/2008 12:02:22 PM | RF | 58 | $0.060 | $3.480 |
| | 2157326020 | | 12/19/2008 11:05:58 AM | 12/19/2008 12:02:07 PM | RF | 56 | $0.060 | $3.360 |
| | 2158055175 | | 12/19/2008 11:14:50 AM | 12/19/2008 12:02:03 PM | RF | 47 | $0.060 | $2.820 |
| | 2128993700 | | 12/19/2008 11:16:53 AM | 12/19/2008 12:02:05 PM | RF | 45 | $0.060 | $2.700 |

Conference Cost: $24.780

Conference Activity Account Total: $58.26

Universal Service Fee Account Total: $6.63

Total Monthly Activity: $58.26

Total Universal Service Fee: $6.63